STATE of Missouri,
Plaintiff-Respondent,

v.

Eva Tolitha POSPESHIL, Arthur James Pospeshil, Jr., Carolyn Sue Pospeshil, and Arthur James Pospeshil, Sr., Defendants-Appellants.

No. 13379.

Missouri Court of Appeals,
Southern District,
Division One.

July 9, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 3, 1984.

Application to Transfer Denied
Sept. 11, 1984.

John D. Ashcroft, Atty. Gen., Deborah Neff, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David H. Dunlap, Harold L. Henry, West Plains, for defendants-appellants.

GREENE, Judge.

Defendants, Arthur Pospeshil, Sr., Eva Pospeshil, Arthur Pospeshil, Jr., and Carolyn Pospeshil, who were husband, wife, son and daughter-in-law, were jury-convicted of second degree burglary, § 569.170.[1] They appeal the trial court's judgment and sentence assessed against each of them of nine months in jail and a fine of $1,000.

Although the sufficiency of the evidence to sustain the convictions is not challenged, an outline of the facts is necessary in order to understand the legal issues on appeal.

James Schwein and his wife, Aileen, managed a poultry farm located near Mountain View, Missouri, which was owned by First Missouri Bank Corporation. The cooling shed, where the eggs were stored and packaged for shipment, was protected by a burglar alarm which, when activated, sounded an alarm in the Schwein home. The alarm sounded about 2 A.M. on the morning of November 27, 1982. Mrs. Schwein called the Mountain View Police Department at approximately 2:15 to 2:30 A.M. Officer Keith Fortner responded, and arrived at the farm within three or four minutes after the call.

As he drove by the poultry farm, Fortner noticed a "blueish-green" Chevrolet pickup with red stock racks pull out from behind the cooling shed. The officer pursued the pickup in a wild chase during which the driver of the truck almost collided with Fortner's police car on three occasions. During the chase, Fortner radioed the pickup's license plate number, XW4–185, to another Mountain View police officer, Thomas Poindexter, along with a description of the pickup and its occupants. Fortner noticed that the driver was a young white male with black hair, and that there were three other people in the cab, one male and two females or children.

Poindexter relayed the license number to the dispatcher for the Howell County Sheriff's Office. This transmission, in Poindexter's judgment, was between 2:30 and 2:45 A.M. Evidently the county dispatcher garbled the number in its transmission to the state computer operator and came up with a name other than Pospeshil as a registration holder of the vehicle. Poindexter heard the erroneous transmission but did nothing to correct it since he was maintaining radio contact with Fortner on another channel. The driver of the pickup eluded Fortner.

At approximately 3:15 A.M., a "greenish-colored" Chevrolet pickup truck, but with no red stock racks, bearing the same license plate number previously given Poindexter by Fortner, and driven by Arthur Pospeshil, Jr., passed Poindexter's stakeout position on Highway 60 in Mountain View. The officer stopped the pickup. The other three defendants were passengers in the truck. Poindexter radioed Fortner that he had stopped a suspect pickup and Fortner came to the scene. Fortner identified the pickup as the vehicle he had chased earlier and Arthur Pospeshil, Jr. as the driver. The license number on the vehicle Poindexter had stopped was the same as the number Fortner had given Poindexter during the high speed chase.

A pair of bolt cutters and a pry bar were recovered from the pickup. A freshly broken egg was found in the bed of the pickup as well as a roll of black rubber "tie-downs" which are used to secure cargo. The pry bar matched "perfectly" a pry mark on the door facing of the cooling room of the egg plant where a hasp holding

1. All references to statutes are to RSMo 1978.

a lock had been broken to gain entry, as well as fresh pry marks on other door facings. An examination of the cooler room at the plant revealed that 36 cases of eggs, each case holding 300 eggs, had been placed on a dolly and moved near the loading dock door. It was raining at the time of the break-in. When arrested, at least two of the Pospeshils had wet clothing.

Some red stock racks were found the next day about two miles from the egg plant, and within 75 yards of where the driver of the pickup had eluded Fortner. The side panels were in good shape but the front panel had "been busted in two to facilitate removal." Blueish-green paint on the stock rack matched the color of the truck Fortner had been pursuing. A black rubber tie-down attached to one of the racks matched those found in Pospeshil's truck. A muddy footprint found inside the egg plant matched the "knobby type sole design" of the shoes worn by Carolyn Pospeshil. Tire prints in the soft ground behind the building had the same tread design as Pospeshil's truck. The younger Pospeshil sold eggs for a living and had, together with his father, on at least two occasions, been to the egg farm to buy eggs for his business operation.

The defense was alibi, and the individual explanations of the alibi varied. Although the defendants were arrested near the scene of the crime, it was contended they were just driving through after 1) surveying farms in the vicinity of a) Salem, Arkansas, or b) Salem, Missouri, with a possible real estate purchase in mind, or 2) being in Thayer, Missouri, to visit, and were on their way home when arrested, according to which story one would believe.

Defense counsel questioned Officer Poindexter extensively on cross-examination about his radio call for a license check on Missouri XW4–185. The pertinent part of that cross-examination was as follows:

"Q. Officer Poindexter, when you called in to the dispatcher the license number, was that in effect a request for him to call the Highway Patrol to get the right license number?

A. Yes, sir.

Q. So the dispatcher, when you made the call to him as you testified you did, that he in turn calls the Highway Patrol?

A. Excuse me, counselor. I can't hear you for the background noise.

Q. Now can you hear me?

A. When this vehicle goes by. He's got awful loud pipes.

Q. As I said, when you called the dispatcher you are in effect requesting him to contact the Highway Patrol to get the—who the vehicle is registered to, right?

A. Yes, sir.

Q. And he, of course, calls District 9 at Willow Springs?

A. Yes, sir."

Defendants produced Arley Toll, a radio dispatcher for Troop G Headquarters of the Missouri Highway Patrol at Willow Springs. Among other duties, he "handled license checks from the counties," and was on duty in the early morning hours of November 27, 1982. He testified that he did not receive any request for a license check from any Howell County police officer in the time frame referred to by Poindexter in his testimony and that the first inquiry he had relevant to this case was for a "wanted and driver's license information for Arthur J. Pospeshil, date of birth 5–26–61," which came at 3:20 A.M. On cross-examination, Toll testified that when he received a request for a license check "[w]e type it onto our computer terminal and send it to our computer in Jefferson City which checks it for stolen, then sends it on to [the] Department of Revenue computer which checks it for registration." He also testified that a computer terminal at the West Plains Police Department in Howell County was "hooked into" the Jefferson City computers, so that the West Plains Police Department could receive the same license check information as the highway patrol.

In rebuttal on this point, the state produced witnesses Jay Henry and Hester Santner. Henry was a Howell County Dep-

uty Sheriff who was on duty in the early morning hours of November 27, while Mrs. Santner, a retired person, was listening to her police scanner at that time. Both witnesses knew Tom Poindexter and both witnesses said that, at some point in time between 1:00 and 3:00 A.M., they heard Poindexter call in a number for a license check, and that the number repeated by the dispatcher was not the same number that Poindexter had given him.

The state also produced witness Dorothy Reavis who, over objection that her testimony was not proper rebuttal since it did not rebut any of defendants' evidence, testified that she was the municipal court clerk and custodian of records of the West Plains Police Department. She maintained log records on computer printouts of license checks. The log record for November 27, 1982 showed a response from the Missouri Uniform Law Enforcement system computer to a request of a check of automobile license XM4–185. This is the same license number as the plate on the Pospeshil vehicle except that the second letter was a "W" instead of an "M". The response to the request for the license check came in at 2:28:52 A.M. This testimony was intended to show that even though Poindexter's request for a license check had not been processed by the highway patrol, Poindexter had made a request that *someone* give him a license check, at about the time Poindexter had testified he *had done so.*

Defendants' first point relied on is that the trial court erred in permitting the state's unendorsed rebuttal witness, Dorothy Reavis, to testify, over objection, concerning a computer printed license registration report dated November 27, 1982, at 2:28 A.M. The only objection made at trial by defendants' attorney was that "[t]his is evidence that the state had knowledge of at the time it put on its case-in-chief. It is not proper rebuttal evidence. They are not rebutting any evidence that the defendant put on." The objection was overruled. In their motion for new trial on this point, defendants alleged 1) Ms. Reavis

was not disclosed as a witness as required by Missouri Supreme Court Rules, 2) that her testimony impeached the testimony of Officer Poindexter given in the state's case in chief, and 3) if admissible, was only such as a part of the state's case in chief. In their brief, defendants expand their objection to the testimony of Ms. Reavis to include five grounds which are 1) the testimony "constituted a new constructive case in rebuttal," 2) it was surprise evidence from a surprise witness in violation of disclosure Rules 25.03 and 25.08, 3) the testimony was irrelevant, 4) it did not rebut any of defendants' evidence, and 5) defendants were compelled to testify in advance of the state's presentation of its "true constructive case."

General rules of appellate review require an objection and proper request for relief as a predicate to examination of a matter arising during trial. Absent such objection, the point is not preserved for appellate review. *State v. Evans,* 639 S.W.2d 820, 822 (Mo.1982). The only remotely reviewable point here is the trial objection that Ms. Reavis' testimony was not proper rebuttal, as it did not rebut any of defendants' evidence and, by inference, that if used, should have been introduced in the state's case in chief.

Even though the objection at trial was not carried over in the same form in the motion for new trial and in defendants' brief filed here, it is close enough so as to be considered on appeal. All other belated claims of non-disclosure in violation of rules, etc., are not considered by us, as assignments of error cannot be broadened or changed by including them in an appeal brief. *State v. Blair,* 631 S.W.2d 91, 94 (Mo.App.1982). In summary, an objection stating the grounds must be made at the time the evidence is sought to be introduced, the same objection must be set out in the motion for new trial and must be carried forward in the appeal brief in order to preserve it. *State v. Kuhrts,* 571 S.W.2d 709, 712–713 (Mo.App.1978).

The determination of the scope of rebuttal is a trial court function that in-

volves the use of discretion. Absent a gross abuse of that discretion, the appellate court will not reverse because the trial court allowed rebuttal testimony. *State v. Crain*, 638 S.W.2d 761, 762–763 (Mo.App. 1982). The rebuttal testimony countered the defense claim that the Pospeshil vehicle was not in the neighborhood of the egg plant at the time when Officer Fortner saw the pickup truck emerging from behind the egg plant. As such, it was proper rebuttal. It may have been better procedure to offer the testimony of Henry, Santner, and Reavis as a part of the state's case in chief, as corroboration of Poindexter's testimony, but failure to do so does not render such evidence inadmissible as rebuttal testimony. *State v. Hoyel*, 534 S.W.2d 266, 269 (Mo.App.1975). We find no prejudice to defendants by reason of the trial court permitting the rebuttal testimony in question. The point is denied.

■■■■ Defendants' second point relied on urges plain error review of their belated claim that a portion of the prosecuting attorney's closing argument that the Howell County sheriff's dispatcher was available as a witness, if the defendants had wished to call him, was prejudicial. The objected to argument reads as follows:

"There has also been a lot made by the defendants, a good deal made over the problem of the license plate number. Ladies and gentlemen, the dispatcher at the Howell County sheriff's office is available for anybody to call as a witness. The defendants didn't call the dispatcher as a witness either. The state didn't need the dispatcher as a witness. We told you what happened."

In their brief, defendants admit the argument was retaliatory to a similar argument raised in their closing argument.

There was no objection to this argument at trial, and it was not listed as trial error in defendants' motion for new trial. Failure to object at the earliest opportunity to the admission of evidence or argument of counsel constitutes a waiver of the claim. *State v. Borden*, 605 S.W.2d 88, 90 (Mo. banc 1980). The point was not preserved for review. Plain error review is not justified as requested. There is no showing how defendants were prejudiced by the admittedly retaliatory argument. The point is denied.

■■■■ Defendants' third point claims error because the trial court permitted the red stock racks, which had been brought into the courtroom so that they could be identified by witness Fortner as similar to those that were on the pickup he had been pursuing at the time of the burglary, to remain in the courtroom when they had not been received in evidence. Defense counsel had requested a mistrial because of such exhibition, which request was denied by the trial court. This point concerns such denial.

Mistrials are only granted in extraordinary circumstances where the prejudicial effect of the evidence or occurrence cannot be removed in any other way. Such determination is subject to discretion of the trial court. *State v. Luallen*, 654 S.W.2d 226, 228 (Mo.App.1983). We find no abuse of that discretion. The racks were brought into the courtroom to see if Officer Fortner could identify them. He could and did identify them as similar to those seen on the truck he pursued, and further testified that they were the same racks he had earlier seen on Highway 17 when they were recovered after the burglary. Later, during cross-examination of Fortner, defense counsel moved the racks so they were directly in front of the jury, and did not remove them or ask for their removal after the cross-examination was finished. Two photographs of the racks were introduced into evidence, and both the state and defense elicited a great deal of testimony concerning the racks, on both direct and cross-examination.

Defendants do not cite us any case even remotely similar on the facts that holds that exhibition before the jury of articles such as these which, though material, were later held to be inadmissible as evidence, is prejudicial error, and we know of none, where the reason for the objection to their admissibility was failure to timely disclose

the identifying witness, or to lay a proper foundation for the testimony. The point is denied.

Defendants' fourth point charges juror misconduct and alleges the trial court's failure to declare a mistrial or grant a new trial for that reason constitutes prejudicial error.

The record is meager on this point, but from what little is preserved, the trial court did not abuse its discretion when it held that the limited contact by jurors Bailey and Shearen with state's witnesses and prosecuting attorneys was de minimus, and did not concern testimony of witnesses or anything that would indicate the jurors favored one side or the other. The point is denied.

Defendants' fifth point contends that it was error to permit the prosecuting attorney, over objection, to cross-examine Arthur Pospeshil, Jr. concerning egg purchases Pospeshil had made in the Mountain View area before the burglary. Defendants rely on § 546.260 which states that a criminal defendant may be cross-examined on any matter referred to in his examination in chief. They contend that where the cross-examination exceeds such guidelines, and involves matter prejudicial to the accused's substantial rights, it constitutes reversible error.

On direct examination, Pospeshil was asked what he did and he said, "I have a few calves and I've got fish ponds and I have chickens. I sell eggs and stuff." On cross-examination, he was asked if he had ever bought eggs from Ed Hunt in the Mountain View area before the break-in, and he said he had done so on one occasion sometime before the break-in. In rebuttal, the state produced witness Ed Hunt, who had formerly operated the burglarized egg plant. Hunt testified the Pospeshils had been to the egg plant on several occasions, and had been in the cooler where the eggs were stored.

The trial court has a great deal of latitude in determining the scope of cross-examination, *State v. Spikes*, 367 S.W.2d 515,

516 (Mo.1963), and its ruling should not be reversed on appeal absent a showing of a clear abuse of discretion. *State v. Brown*, 624 S.W.2d 543, 545 (Mo.App.1981). Here, Pospeshil was asked a general question by his counsel concerning employment. The state had a right to ask about specific details of that employment, including questions relative to whether Pospeshil bought eggs and, if so, from whom. *State v. Williams*, 519 S.W.2d 576, 578 (Mo.App.1975); *State v. Leonard*, 606 S.W.2d 403, 410–411 (Mo.App.1980). We find no merit in the allegation. The point is denied.

We have carefully examined defendants' points 6, 7, 8, and 9, and find they have not been properly preserved for review and, even if they had, have no merit.

The judgments in question are affirmed.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.