STATE of Missouri, Respondent,

v.

Herschel BAUM, Appellant.

No. 14201.

Missouri Court of Appeals,
Southern District.

June 30, 1986.

Motion for Rehearing or to Transfer
Denied July 9, 1986.

Application to Transfer Denied
Sept. 16, 1986.

David Robards, Joplin, for appellant.

William L. Webster, Atty. Gen., Lee A. Bonine, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant Herschel Baum guilty on two charges of stealing by deceit and one charge of arson in the second degree. He was sentenced to three years' imprisonment for each stealing offense and five years' imprisonment for arson, the sentences to run concurrently. Defendant appeals. In general defendant claims that the trial court erred in giving Instruction 6, in rejecting evidence offered by defendant, and in not granting a new trial based on alleged misconduct affecting a juror.

Each of the three counts of the indictment arose out of a separate transaction.

Count I charged the defendant with obtaining money by deceit from Great American Insurance Companies, the fire insurer of Buttons and Bows Children's Shop, a retail store in Joplin operated by defendant's wife Janice Baum and owned by a closely held corporation of which Janice Baum was president and defendant was treasurer. A fire occurred on June 2, 1981, causing damage to the shop. The state's evidence showed that defendant arranged for the setting of the fire and falsely represented to the insurance company that he had not done so, thereby inducing payment of the loss.

Count II, like Count I, involved stealing by deceit from Great American Insurance Companies. Defendant's claim for the insurance proceeds was based on a fictitious burglary and theft which allegedly occurred on September 10, 1981, at Hershey's Western Wear, a retail store owned and operated by defendant in Joplin. The state's evidence showed that although goods were taken from the store, defendant had arranged the incident and falsely represented to the insurer that he had not done so.

Count III charged the defendant with committing arson in the second degree by starting a fire on December 5, 1983, in a retail store located in Joplin and occupied by Western Wardrobe, a business competitor of defendant. The state's evidence showed that defendant arranged for Valerie Cooper to set this fire.

■ Defendant's first point is that the trial court erred in giving Instruction 6, the state's verdict-director, on Count I. Instruction 6, with the portion of it concerning punishments deleted, reads:

"INSTRUCTION NO. 6

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of commit-

ting that offense, he aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that between June 18, 1981 and May 4, 1982, in the County of Jasper, State of Missouri, the defendant and Janice B. Baum appropriated money owned by Great American Insurance Companies, and

Second, that the defendant and Janice B. Baum did so by means of deceit by purposely representing that a fire loss occurring at Buttons and Bows Childrens Shop occurring on June 2, 1981 did not originate by any act, design or procurement on defendant's part, a representation defendant knew was false and did not believe to be true, and Great American Insurance Companies relied on defendant's false representation, and

Third, that the defendant and Janice B. Baum in such manner obtained such property for the purpose of withholding it from the owner permanently, and

Fourth, that the property so appropriated had a value of at least one hundred and fifty dollars,

then you are instructed that the offense of stealing has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of stealing, the defendant aided or encouraged Janice B. Baum in committing that offense,

then you will find the defendant guilty under Count I of stealing.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense."

.    .    .    .    .

Defendant asserts that it was error to give the instruction because: (a) "To find the defendant guilty under the instruction, the jury had to find the defendant's wife guilty and there was no evidence to support such a finding and no evidence that the defendant in any way aided and abetted his wife in the commission of the submitted offense," and (b) "The prejudice to the defendant created by the use of the instruction permeated the defense with regard to Counts II and III" because defendant's wife was called as a defense witness and the giving of the instruction "undermined illegally her credibility as a defense witness with regard to all counts."

With respect to Count I, the state's evidence showed that the Buttons and Bows Children's Shop was actively managed by Janice Baum. It was owned by a corporation of which Janice was president and defendant was treasurer. Each held 50 percent of the stock. The business was not prosperous and defendant told state's witness Valerie Cooper that it was "bankrupting" him.

Great American Insurance Companies carried fire insurance on the store, providing coverage for loss of inventory and for loss occasioned by business interruption. The fire of June 2, 1981, which caused damage to the inventory of the store and caused it to be closed for three months, was set by state's witness Calvin Moore who admitted setting it. Valerie Cooper, at the instance of defendant, had made arrangements for Moore to set the fire. Defendant gave Valerie $300 which she in turn paid to Moore for committing the arson.

Defendant admitted that he signed proofs of loss with respect to losses occasioned by the fire, sent them to the insurance company and was paid $72,029. The state's evidence showed that the proof of loss which defendant filled out and submitted to the company contained a representation that the loss did not originate by any act, design or procurement on his part.

Separate proofs of loss were submitted with respect to the inventory loss and the business interruption loss. Janice Baum,

as president of the insured corporation, Buttons and Bows Children's Shop, Inc., signed the proof of loss with respect to the inventory loss. There was no evidence that Janice Baum was involved in or had any knowledge of the planning or execution of the arson.

After the court had read Instruction 6 and the other instructions to the jury, Prosecutor Rouse, near the outset of his opening argument, said:

"Ladies and gentlemen, the first one I want to go into is Buttons and Bows, and that's Instruction Number 6. Uh, first of all, you, as you heard the Judge read to you, and as you will read, the name Janice Baum comes in here, comes in throughout this instruction. Janice Baum is not charged with any crime here. The State is not intending to prove that Janice Baum had any participation in this crime. The reason Janice Baum is in this instruction is, as you heard Otis Thomas testify, she was a co-owner of Buttons and Bows along with Hershey Baum. She was also on the check. Therefore, the representations were joint representations, and the check was a joint check to her and to Herschel Baum. That's the reason she's in the instruction. The State's not trying to convict, uh, Janice Baum of any crime here. What she relied on, as what the insurance company relied on, was what Herschel Baum told them."

Instruction 6 is based on MAI–CR2d 2.12 and 24.02.2, the latter instruction dealing with stealing by deceit. MAI–CR2d 2.12 "is applicable when the evidence shows that the defendant acted together with another person in the commission of an offense or in any manner aided another person in the commission of an offense." Note 4, Notes on Use (1983 Rev.) Note 8 reads, in pertinent part:

"Situations NOT covered by this format of MAI–CR2d 2.12.

(a) This format of MAI–CR2d 2.12 covers only those situations where the defendant is to be held responsible for the conduct of another person and that other person is also guilty of the offense. This format does NOT apply to situations where the defendant is being held responsible for the conduct of another person and that other person is not guilty of the offense. For example, it does not cover the situation where the other person is not guilty because the other person does not himself have the required culpable mental state for the crime, as can occur when the defendant commits a crime by the use of an 'innocent agent.' "

There was no evidence that Janice Baum committed any offense nor was there evidence that Janice Baum was guilty of deceit as defined in § 570.010.[1] It is true that Janice Baum and defendant jointly did the acts ascribed to them in paragraphs First and Third of Instruction 6, that is, they jointly "appropriated" money of the insurance company and intended to keep it. Paragraph Second of the instruction required the jury to find that defendant and Janice Baum appropriated the money "by means of deceit," and there was no deceit on the part of Janice. Paragraph Fifth of the instruction is subject to the construction that the jury must find that Janice committed the offense of stealing and that defendant aided or encouraged her to do so. There was no evidence that Janice committed the offense of stealing.

Because the use of MAI–CR2d 2.12 was in violation of Note 8 of its Notes on Use, the trial court erred in giving Instruction 6. "Giving ... an instruction ... in violation of ... any applicable Notes on Use shall constitute error, its prejudicial effect to be judicially determined." Rule 28.02(e).

The testimony of Janice Baum, a defense witness, was confined to Count I. She testified that she and the defendant owned

---

1. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Section 570.010(7) reads, in pertinent part:

" 'Deceit' means purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind...."

the Buttons and Bows Children's Shop and that she operated it on a day to day basis. She was summoned to the scene of the fire, shortly after it was discovered, and unlocked the back door so the firemen could enter. She testified with respect to the extent of the inventory loss and the business interruption. Such essentially was the extent of her testimony. The prosecutor did not cross-examine her.

Defendant does not challenge those portions of Instruction 6 which deal with defendant's own conduct, nor does he question the sufficiency of the evidence to support those portions. Defendant does not challenge the sufficiency of the evidence to support his conviction on Count I. His argument is that the instruction damaged Janice Baum's credibility as a defense witness.

Paragraph Fifth of Instruction 6 was not supported by the evidence. The conduct ascribed to defendant himself by Instruction 6 was sufficient, if found, to make him guilty of stealing, even if paragraph Fifth had been omitted. MAI–CR2d 2.12 should not have been used. The jury properly could not have made the finding which paragraph Fifth required them to make. The instruction was confusing and misleading. This court holds that the giving of Instruction 6 was prejudicial error and that defendant is entitled to a new trial on Count I.

■ This court rejects defendant's argument that the error in Instruction 6 permeated the entire trial and prejudiced him with respect to Counts II and III. The testimony of Janice Baum was not exculpatory, was brief, was confined to Count I, and was not attacked on cross-examination. This court holds that the error in the giving of Instruction 6 taints only the verdict on Count I.

■ Defendant's second point is that the trial court erred in excluding certain evidence offered by defendant with respect to Count II. The challenged rulings were made during the testimony of defense witness Otis Thomas, a certified public accountant who kept the business records for Hershey's Western Wear store, the site of the fictitious burglary of September 10, 1981.

The excluded items were: (a) The dates and amounts of the three payments totaling $82,918.14 which the fire insurer of the store paid defendant for the inventory taken in the "burglary." (b) Defendant's Exhibit 61, a graph showing the amounts of the monthly purchases of inventory for the store for October, November and December 1980, and for the same three months in 1981.

Item (a) was properly excluded on the ground of repetitiousness. The same evidence had previously been presented by defendant on cross-examination of state's witness Dennis Gering, an employee of the fire insurer, and there was no conflicting evidence.

■ Exhibit 61 was excluded on the ground that it was not material. "On matters of relevancy and materiality, the trial court has broad discretion and its decision should be overturned only if it abused that discretion." *State v. Blair,* 638 S.W.2d 739, 757[25] (Mo. banc 1982). See also *State v. Wickizer,* 583 S.W.2d 519, 524[9] (Mo. banc 1979). The correctness of the trial court's ruling with respect to defendant's Exhibit 61 must be considered in light of other evidence presented by both sides.

State's witness Dennis Gering, an employee of the fire insurer of the store, testified that his company paid $82,918.44 for the inventory taken in the "burglary." On cross-examination by defense counsel Gering testified that payment was made by three checks as follows: October 2, 1981— $25,000; October 28, 1981—$56,942; November 19, 1981—$976.44.

State's witness Ellen Riggs testified that she was an employee of the store at the time of the "burglary," that she observed what items were missing from the store on

the day following the burglary, and that her best estimate of the wholesale value of those items was $10,000 or $11,000. On cross-examination the defense introduced defendant's Exhibit 13, which was an inventory of the store taken on April 30, 1981. That inventory, in which Ellen Riggs participated, showed that the value of the goods on hand at that time was $177,374.

Defense witness Otis Thomas testified that in November 1980 Hershey's Western Wear store moved from downtown Joplin to a new location on Rangeline in the eastern part of the city. Thomas said that after the move sales increased "about three times the ... amount of sales over 1980."

Thomas identified defendant's Exhibit 59, a graph which showed the dollar amount of the sales of the store for each month from December 1979 through December 1981. The witness also identified defendant's Exhibit 60, which was a graph showing "inventory levels" of the store for April 30, 1981, ($177,374), September 10, 1981, ($201,316), and September 11, 1981, ($120,028). The "burglary" took place on September 10, 1981. Exhibits 59 and 60 were received into evidence. Exhibit 60 contained a column entitled "Inventory missing" and showed that amount to be $81,288.

The April 30, 1981 inventory level was based on defendant's Exhibit 13, the "physical" inventory previously identified by state's witness Ellen Riggs. The inventory of September 10, 1981, immediately preceding the burglary, was based on Exhibit 13 and on business records reflecting purchases and sales of inventory since April 30, 1981. The September 11, 1981 inventory was based on a physical inventory taken immediately following the burglary.

The court received into evidence defendant's Exhibit 14 which showed the missing inventory to have a value of $81,288.[2] Exhibit 14 reads:

HERSHEY'S WESTERN WEAR
COST OF REPLACING INVENTORY

| | |
|---|---|
| Physical Inventory Taken at cost April 30, 1981 | $177,374 |
| Plus Purchases at cost for May 1, 1981 thru Sept. 10, 1981 | 68,072 |
| Less Credits Applied toward purchases | (7,160) |
| Total Cost of Goods Available for Sale | 238,286 |
| Less Sales From May 1, 1981 thru Sept. 10, 1981 $98,392 less sales tax $4,237 = $94,155 at 47.8% | (45,006) |
| Less Physical Inventory Sept. 11, 1981 Retail price $251,104 at 47.8% | (120,028) |
| Cost of Goods Missing | 73,252 |
| Freight | 8,036 |
| | 81,288 |

Defendant's Exhibit 61, the rejected exhibit, showed, in graphic form, inventory purchases for the last quarter of 1980 totaling $60,472. Inventory purchases for the last quarter of 1981 were shown to be $177,748. Defendant complains that the court, in excluding Exhibit 61, prevented him from showing those figures and from showing a "net increase in purchases of $117,276." Defendant also asserts that the inventory purchases made in the last quarter of 1981 were "correlated" with the receipt of the insurance payments. Defendant also argues that the excluded exhibit should have been received "to rebut, circumstantially, evidence introduced by the state that defendant had not lost much inventory as a result of the burglary and had inflated his insurance claim, and to rebut, circumstantially, state evidence suggesting the defendant involved himself in the burglary because of financial difficulties."

Otis Thomas did testify that the total inventory purchases for the store for the last quarter of 1981 was "right at $177,-000" and that, of that amount, "some" $30,000 was purchased in October 1981, and "some" $65,000 was purchased in November 1981.

The defendant himself testified that "after I received a settlement from the insurance company the checks went to the bank to replace the inventory that was gone. I did replace the inventory from September

---

2. As previously stated, the fire insurer paid $82,-918.44 for the inventory loss. Defense witness Thomas testified that Exhibit 14 "ended up being the final settlement with the insurance company." Defendant's brief makes no mention of the discrepancy between the two figures.

1981 to December 1981. I probably bought $100,000 worth of inventory."

Although not in graphic form, the testimony of Otis Thomas with regard to inventory purchases during the last quarter of 1981 was the same information which the excluded exhibit showed with respect to those months. The only data which the excluded exhibit showed, and which did not otherwise appear in evidence, were the monthly inventory purchases for the last quarter of 1980. The record is silent on whether any, some or all of those purchases were included in the April 30, 1981 physical inventory.

By Exhibit 59 defendant showed monthly sales for the 21 months preceding the "burglary" and the four months following it. By Exhibits 13, 14 and 60 defendant showed, meticulously, the manner in which the amount of the missing inventory was determined. Defendant's Exhibit 11, which was admitted into evidence, was a "statement of operations" for the store for the 12 months ending December 31, 1980, and for the last quarter of 1980. Defendant's Exhibit 12, which was admitted into evidence, was a "statement of operations" of the store for the 12 months ending December 31, 1981. The latter exhibit also showed operations for "one and one-half month ended December 1981."

In view of the other evidence which defendant was permitted to introduce, defendant was in a position to rebut the state's evidence that he "had not lost much inventory as a result of the burglary and had inflated his insurance claim," and to rebut the state's evidence "suggesting the defendant involved himself in the burglary because of financial difficulties." Evidence was introduced which permitted the defendant to "correlate" the inventory purchases made in the last quarter of 1981 with the receipt of the insurance payments. So viewed, Exhibit 61 was largely cumulative and was of questionable materiality. The trial court did not abuse its discretion in excluding Exhibit 61. Defendant's second point has no merit.

Defendant's third point is that he was entitled to a new trial because of jury misconduct and that the trial court erred in failing to grant that relief. This claim of error was assigned initially in defendant's motion for new trial. At the hearing on that motion defendant presented evidence by Earlene Olds and Janice Baum, both of whom testified that they heard portions of a conversation between state's witness Ellen Riggs and juror Molly Wheeler. According to Earlene Olds the conversation lasted a minute or two and in the course of it Ellen Riggs told the juror, "I am here for the Hershey Baum trial to clear up some misunderstandings." Similar testimony was given by Janice Baum who also testified that she did not report the conversation to defense counsel.

Juror Wheeler and Ellen Riggs both testified that a brief conversation took place and that it did not deal with the trial. Both denied that Ellen Riggs made the statement attributed to Riggs by Earlene Olds. Juror Wheeler testified, "I was coming out of the ladies' room and [Ellen Riggs] was sitting down, and she said, 'You look familiar,' and I said, 'So do you.' We tried to determine where we had seen each other and finally figured out it was at the radio station."

Where a claim of misconduct on the part of a juror is first presented in a motion for new trial, "an affirmative showing must be made that defendant and his counsel were ignorant of the fact until after the trial." *State v. Reeder*, 394 S.W.2d 355, 357[1] (Mo.1965). To similar effect see *State v. Bollinger*, 560 S.W.2d 606, 608[3] (Mo.App. 1978).

Janice Baum testified that she did not report the incident to defense counsel. Earlene Olds gave no such testimony and neither of the two witnesses testified that they did not report the incident to defendant until after the trial. Accordingly the point has not been preserved for appellate review. Nevertheless, even if the point is deemed to have been preserved, the state met its burden of showing that the juror was not subjected to an improper influence.

As said in *State v. Martin,* 624 S.W.2d 879, 882 (Mo.App.1981), "The colloquy, while improper, was casual, brief and totally unrelated to anything associated with the trial. There was no prejudice to the defendant. The trial court did not abuse its broad discretion in refusing to proclaim a mistrial because of this innocent encounter." (Citing authorities.) See also *State v. Pospeshil,* 674 S.W.2d 628, 634[14] (Mo.App.1984); *State v. Friend,* 607 S.W.2d 902, 904[7, 8] (Mo.App.1980). Defendant's third point has no merit.

That portion of the judgment finding that the defendant is guilty of the "Class C felony stealing, Count I," is hereby reversed and the cause is remanded for further proceedings with respect to Count I; those portions of the judgment finding the defendant guilty of "Class C felony of stealing, Count II" and "Class C felony of arson in the second degree, Count III," and imposing punishment with respect to said Count II and Count III are affirmed and in all other respects the judgment is affirmed.

TITUS, P.J., and GREENE, J., concur.