STATE of Missouri, Respondent,

v.

Jack Houston McCLINTIC, Appellant.

No. 14811.

Missouri Court of Appeals,
Southern District,
Division One.

May 13, 1987.

Motion for Rehearing or Transfer to
Supreme Court Denied June 2, 1987.

Application to Transfer Denied
July 14, 1987.

James F. Crews, Crews, Gaw & Pyle, Tipton, for appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

A jury found Jack Houston McClintic ("appellant") guilty of selling marihuana, § 195.020, RSMo Cum.Supp.1984, and assessed punishment at 20 years' imprisonment. The trial court entered judgment per the verdict. Appellant briefs three points.

As the sufficiency of the evidence to support the verdict is unchallenged, we summarize only the evidence necessary to consider the assignments of error.

In 1985, troopers Lisenby and Wilson of the Missouri State Highway Patrol established an "undercover operation" in Camden and Miller Counties, investigating criminal activity regarding controlled substances. They met appellant for the first time June 26, 1985, and thereafter were able to "cultivate a relationship" with him.

On September 23, 1985, the officers went to a gasoline station where appellant was employed, and Wilson asked appellant if appellant could provide Wilson 20 pounds of marihuana. Wilson said he would pay $500 per pound, a total of $10,000. Appellant stated he "would have to check with his supplier" to see whether the latter would agree to that price. Appellant agreed to meet Lisenby and Wilson at a tavern later that evening.

That night, at the tavern, appellant told Lisenby and Wilson he could not yet give them a "firm price," and that he would phone their apartment "about seven o'clock" the next evening.

Appellant phoned the apartment as scheduled, telling Lisenby he was concerned about "getting busted," and that he would call back later to arrange the time and place of the transaction.

Some two hours later, appellant phoned again, telling Wilson he would come to the apartment to see if Wilson "had the ten thousand dollars." Appellant arrived shortly thereafter, and was shown $10,000 by Wilson.

Appellant departed, returning an hour later with a suitcase, which he opened, revealing two plastic bags containing marihuana. Appellant was thereupon arrested by Wilson, and by other officers who had concealed themselves in the apartment. The marihuana in the suitcase weighed approximately 21 pounds.

Testifying in his own defense, appellant related that when the undercover officers asked to purchase the 20 pounds of marihuana, he had to "contact a supplier and ask him what he thought about it." Appellant explained: "It's not very often somebody will give you ten thousand dollars worth of marijauan [sic] here to take care of you. So I ask him and he said 'How good do you know 'em?' I told him everything about 'em, and he said, 'Well, if you trust 'em, I trust you. Go ahead.' "

Appellant also disclosed on direct examination that Wilson had come to him on four earlier occasions to buy marihuana, and that on each occasion he had to "place some phone calls" to fill the orders. According to appellant, after he met the undercover officers, they bought all of the marihuana he sold.

On cross-examination, appellant testified he began smoking marihuana some two years before his arrest, and began selling it in April, 1985. He explained, "I got myself in a little bit of trouble and I owed quite a bit of money." Asked what kind of trouble, appellant replied, "I was snorting some cocaine and got a little out of hand and

couldn't pay it." Appellant revealed cocaine was costing him about $1,600 per month. Asked how long this went on, appellant answered, "Not too long, because they won't let you get that out of hand." At that juncture, the transcript shows:

"Q. Mr. McClintic, who'd you get this cocaine from?

A. I can't tell that, Sir.

Q. Well, I'm going to ask the Court to instruct you to tell us, Mr. McClintic?

A. I'm sorry.

Q. What do you mean you're sorry?

A. I can't tell.

Q. Your Honor, I'm going to ask the Court to instruct the witness to answer the question."

The trial court immediately called a bench conference, at which appellant's lawyer stated appellant would object to answering on "Fifth Amendment" grounds. The trial court denied the objection, and terminated the conference.

The trial court then instructed appellant to answer the question, but appellant refused, stating, "Because my Mom just had a heart attack three weeks ago and I think it would put myself in bodily danger and I would just as soon she didn't have those worries and I'm sorry, I just can't."

The trial court again directed appellant to answer, but appellant declined, whereupon the trial court declared a recess.

During the recess, the trial court advised appellant that if he did not answer the question, the trial court would hold him in contempt. Appellant persisted in his refusal. At that point, appellant's lawyer, *for the first time*, objected on the ground that the question was immaterial to any issue in the case.

After a discussion between the trial court and counsel, the trial court announced it was finding appellant in contempt, and would take the issue of punishment under advisement.

Proceedings resumed in the presence of the jury, with the prosecutor continuing his cross-examination. Appellant acknowledged he had "sold some cocaine" between January and April, 1985, to support his cocaine habit, and that at one point he owed his supplier $2,300. Appellant recounted that when he began selling marihuana, it was just to "certain friends," and that the most marihuana he had ever sold at one time before meeting the undercover officers was "a quarter pound." Asked where he got the marihuana, appellant replied: "From the same place I got the cocaine. It was his idea of helping pay off the debt because I was having a hard time paying it."

The prosecutor again asked appellant the supplier's name. Appellant's lawyer requested, and was granted, a bench conference. During the conference, appellant's lawyer asked for a recess to inform appellant "how to take the Fifth Amendment on criminal activity." The trial court called a recess, during which appellant's lawyer renewed the objection that the supplier's identity was immaterial. The trial court opined that the identity was material, inasmuch as appellant had indicated he was selling marihuana because a cocaine dealer wanted appellant to pay off a cocaine debt.

Appellant stated, "I'm going to have to take the Fifth Amendment."

The trial court told appellant that was not a proper reason for refusing to answer. The trial court further observed that if there had ever been any Fifth Amendment protection, appellant had waived it by testifying he had purchased cocaine from the supplier, which testimony "came in without objection."

The trial court once again instructed appellant to answer, but appellant refused. The trial court, for the second time, found appellant in contempt, announcing that punishment would be considered later.

Proceedings resumed anew in the presence of the jury, and the prosecutor again asked appellant the name of the supplier. Appellant responded, "I'm going to have to take the Fifth Amendment, because I think

it would tend to incriminate me.... I think it would get me killed."

The trial court said: "Mr. McClintic, for your information that is not the proper basis to take the Fifth Amendment.... We're going on to another subject. I'm not going to pursue this further."

Appellant's second point, which we address first, is:

"The trial court erred in overruling appellant's objection to the prosecutor's question 'who was the supplier' to appellant because said question was immaterial and prejudicial in that said question was not relevant, did not have any probative value, and was highly prejudicial to appellant in that said question resulted in twice holding appellant in contempt for his refusal to answer said question."

■ We point out to appellant that the trial court's action in twice declaring him in contempt could not have prejudiced him in the eyes of the jury, as those announcements were made outside the jury's presence. Furthermore, we are not called upon in this appeal to review any order assessing punishment for contempt. Accordingly, we confine our attention to what took place before the jury.

The objection that the supplier's identity was immaterial was not voiced until after the trial court had twice admonished appellant to answer the question.

■ A litigant must make his request for the action or ruling which he believes to be called for when the occasion for it first appears, or the claimed error is waived. *State v. O'Dell,* 649 S.W.2d 504, 507[11] (Mo.App.1983); *State v. Ricks,* 642 S.W.2d 375, 377[5] (Mo.App.1982). Additionally, a point in a brief on appeal must be based on objections made and reasons assigned at the time the alleged error occurs. *State v. Thomas,* 452 S.W.2d 160, 164[10] (Mo. 1970).

It follows that in considering appellant's second point, we look to only what occurred *after* appellant registered the objection on which he now relies.

After that objection was made, appellant, in the presence of the jury, was twice asked the name of the supplier, and appellant on each occasion refused to divulge it. However, on neither occasion was appellant ordered by the trial court, in the jury's presence, to answer the question. Consequently, there was no occasion, after the objection was made, when the jury observed appellant disobey a command by the trial court.

Appellant does not explain, and our examination of the record does not reveal, how he could have been harmed by what occurred in the presence of the jury after the objection was made.

Appellant does assert, "In the present case, there is no evidence that the defendant was not harmed by the improperly admitted evidence." That statement, however, is nonsensical, as there was no "improperly admitted evidence." The evidence the prosecutor was attempting to elicit from appellant was the supplier's name, which appellant never revealed.

More importantly, however, we find no merit in appellant's contention that the name of the supplier was immaterial. While that might have been so *before* appellant testified, his testimony, as we have seen, included repeated references to the supplier.

Section 546.260.1, RSMo Supp. 1985, provides:

"... no person on trial ... shall be required to testify, but any such person may testify at his or her option ... and shall be liable to cross-examination, as to any matter referred to in his examination in chief...."

■ In the cross-examination of an accused who testifies in his own behalf, the prosecution is not confined to a categorical review of the evidence given by the accused on direct examination, but may examine him in detail as to matters generally referred to in his examination in chief. *State v. Murphy,* 592 S.W.2d 727, 731[4] (Mo. banc 1979); *State v. Weekley,* 621

S.W.2d 256, 260[5] (Mo.1981). The extent of cross-examination of an accused rests largely in the discretion of the trial court, and an appellate court is not to interfere unless that discretion is abused. *State v. Dunn,* 577 S.W.2d 649, 653[3] (Mo. banc 1979); *Weekley,* 621 S.W.2d at 260[4].

■ In view of appellant's numerous references to the supplier, and appellant's implication that fear of the supplier motivated appellant to sell marihuana to pay his cocaine debt, we cannot say the trial court abused its discretion in ruling that the supplier's identity was material. For an analogous case, see *State v. Applewhite,* 682 S.W.2d 185 (Mo.App.1984), holding that where an accused testified about the actions of an individual who, according to the accused, carried stolen property into a building, the accused was subject to cross-examination about that individual, including physical description and identifying characteristics. *Id.* at 189[8].

Appellant's second point is without merit.

We next address appellant's third point, which avers that the trial court erred in refusing to give the jury an instruction requested by appellant, which instruction would have submitted the offense of possessing more than 35 grams of marihuana. Appellant insists evidence of possession was before the jury, and the jury could have found that "a completed sales transaction had not occurred."

Appellant's theory, as we comprehend it, is that inasmuch as no cash was handed to him by Wilson at the time appellant delivered the marihuana to the apartment, the jury could have found appellant guilty of merely possessing the marihuana, not selling it.

■ Rule 30.06(e)[1] provides that if a point relates to the refusal of an instruction, such instruction shall be set forth in full in the argument portion of the brief. The instruction appellant claims should have been given appears nowhere in the argument portion of his brief (or anywhere else in his brief, for that matter). By that omission, appellant has failed to preserve the point for appellate review. *State v. Williams,* 674 S.W.2d 46, 48[5] (Mo.App. 1984); *State v. Swink,* 620 S.W.2d 63, 64[1] (Mo.App.1981).

■ However, even if the point were cognizable, it would be unavailing. Appellant's testimony, which paralleled that of Lisenby and Wilson, established that there was an agreement between them as to the quantity of marihuana to be purchased and the price therefor, that Wilson showed appellant the purchase money during appellant's first visit to the apartment on the night of September 24, that appellant departed to pick up the marihuana, and that he returned to the apartment and carried the marihuana inside, where he was arrested.

On virtually identical facts, *State v. Felkins,* 599 S.W.2d 955 (Mo.App.1980), held that by reason of the statutory definition of sale of a controlled substance, a marihuana sale occurred even though the seller was arrested before the undercover agents handed him any money. *Id.* at 958[4]. The statutory definition of sale as it pertains to the instant case, § 195.010(32), RSMo Cum. Supp.1984, is identical to the definition at the time of the transaction in *Felkins.*

*State v. Corley,* 639 S.W.2d 94, 96[4] (Mo.App.1982), squarely holds that in a prosecution for selling marihuana, an instruction on the offense of possession of marihuana is required *only* if the evidence shows that the accused may be guilty of possession even though he may not be guilty of selling. *Corley* was followed in *State v. Woody,* 699 S.W.2d 517, 525[10] (Mo.App.1985).

In the instant case, appellant, in his own testimony, solemnly admitted every element of a sale of marihuana, as statutorily defined. Therefore, there was no evidentiary basis for a verdict acquitting appellant of the offense charged and convicting

1. Rule references are to Missouri Rules of Criminal Procedure (17th ed. 1986).

him of possession. That being so, the trial court was not required to submit the latter offense to the jury. Appellant's third point is denied.

The only assignment of error not yet considered is appellant's first point, which alleges the trial court erred in denying appellant's challenge for cause of prospective juror Finley. Appellant maintains that because Finley would not, during voir dire, disclose the nature of his work with the criminal investigation arm of the armed services, he should have been disqualified as a juror, as any bias or prejudice by Finley against appellant could not be assessed. Appellant complains that the trial court's denial of appellant's challenge for cause required appellant to use one of his peremptory challenges "to keep Mr. Finley off the jury."

Rule 30.06(h) provides that all statements of fact and argument in a brief shall have specific page references to the legal file or the transcript. Nowhere in appellant's brief does he direct us to the page in the transcript where his alleged challenge of Finley for cause appears, or to the page in the transcript or legal file showing that he used one of his peremptory challenges to remove Finley from the jury panel.

We have searched the transcript and legal file, but have failed to find anything demonstrating that (a) appellant challenged Finley for cause, (b) the trial court denied the challenge, or (c) appellant used a peremptory challenge to remove Finley from the venire. The only reference to a challenge that we have been able to locate is a notation on the docket sheet that after voir dire, the trial court declared a recess "to take challenges & for attorneys to make strikes." That entry obviously fails to establish any of the averments in appellant's first point. The jury list, which might at least have shown that Finley was stricken by appellant, is, inexplicably, omitted from the legal file, and all the transcript shows is that when the clerk called the names of the 12 individuals selected for the jury, Finley's name was unmentioned.

In *State v. Britton*, 666 S.W.2d 11 (Mo. App.1984), the accused argued on appeal that the jury panel should have been quashed because the trial court excused two jurors for cause and peremptorily struck six additional jurors, leaving only 18 veniremen. The point was denied because the accused failed to present a record of the action of the trial court about which he complained. *Id.* at 14[4]. The accused also assigned error because the trial court allegedly excused the only black person on the panel. That complaint was likewise denied because the accused failed to present a record of the incident to the appellate court. *Id.* at 15[7].

In *State v. Brauch*, 529 S.W.2d 926 (Mo. App.1975), the accused averred that prejudicial error resulted when the trial court denied his challenge for cause as to two veniremen. The opinion stated no error was demonstrated, in that the record did not disclose whether either of the challenged veniremen served as jurors, or if stricken, whether they were stricken by the accused or by the State. *Id.* at 931[11].

■ Applying *Britton* and *Brauch*, we hold that the failure of the record on appeal to show that appellant challenged Finley for cause, that the trial court denied the challenge, and that appellant used a peremptory challenge to remove Finley from the jury panel, forecloses appellant's first point.

Judgment affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.