**STATE of Missouri, Plaintiff–Respondent,**

v.

**Glen BROWN, Jr., Defendant–Appellant.**

**No. 53448.**

Missouri Court of Appeals, Eastern District, Division Four.

April 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 25, 1988.

Application to Transfer Denied July 26, 1988.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Glen Brown, appeals from his conviction, after a jury trial, of murder in the first degree. Defendant was sentenced to life imprisonment without parole. We affirm.

Defendant does not challenge the sufficiency of the evidence. On July 26, 1986, defendant went to the house of Joe Davis to play cards with Davis, Ronald Perkins, and Juanita Dorsey. During the card game defendant and Perkins argued. Defendant left that evening after the game

broke up. On the following day, July 27, 1986, defendant returned to Davis's house where he and Perkins argued again. Defendant left the Davis house and returned shortly thereafter with a knife. He entered the house, met Perkins in the hallway, and stabbed him in the chest causing his death. Defendant testified that he stabbed Perkins in self-defense.

Defendant first claims the trial court erred by permitting the cross-examination of defendant to go beyond the scope of direct examination in violation of Section 546.260, RSMo (1986).[1]

On direct examination defendant claimed he was in fear of Perkins and stabbed him in self-defense. Defendant testified that on July 27, 1986, he was in the Davis house when Perkins came out of a hallway door with a knife in his hand. Defendant testified he grabbed the knife from Perkins by breaking his grip. Defendant also testified he swung the knife at Perkins because he was scared.

On cross-examination the prosecutor questioned defendant regarding statements he made to police indicating he was not afraid of Perkins. One of the questions involved defendant's statement to police that he knew karate. The prosecutor further questioned defendant regarding what he told police in his taped statement relating to his claimed mental state of fear.

The State is not confined to a categorical review of the evidence the accused gave on direct examination, but may cross-examine the accused in detail as to matters generally referred to in his examination in chief. *State v. McClintic*, 731 S.W.2d 853, 856 (Mo.App.1987). The extent of cross-examination is within the trial court's discretion and an appellate court is not to interfere unless that discretion is abused. *Id.* at 857.

The prosecutor's line of questioning was directly related to defendant's testimony on direct examination concerning his fear of Perkins and his claim of self-de-

---

1. Section 546.260, RSMo (1986) provides that a criminal defendant may "testify at his or her option ... and shall be liable to cross-examina-tion, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case...."

fense. It was not an abuse of discretion for the trial court to allow the prosecutor to ask defendant questions about his statement to police which were relevant to his mental state.

■ Defendant also claims the questions were improper because the statement he gave to police was not inconsistent with his testimony on direct examination. Defendant's objection at trial was that the questions were not within the scope of the direct examination. "[A]n objection stating the grounds must be made at the time the evidence is sought to be introduced, the same objection must be set out in the motion for new trial and must be carried forward in the appeal brief in order to preserve it." *State v. Pospeshil,* 674 S.W.2d 628, 632 (Mo.App.1984). Assignments of error cannot be broadened or changed by raising them for the first time in an appeal brief. *Id.* Accordingly, this additional contention is not preserved for appellate review. Defendant's first point is denied.

Next, defendant claims the trial court erred by overruling his objection to a state witness's unresponsive answer to a question.

On direct examination, Virgie Artis was asked by the State if she knew if defendant ever had trouble with Perkins prior to this incident. She replied, "I never known Ronnie (Perkins), you know, to have no trouble with anybody."

■ Defendant did not object before Artis answered the question and made no motion to strike the answer once it was given. An objection made after the witness answers the question is untimely. *State v. Moss,* 700 S.W.2d 501, 503 (Mo. App.1985). The ruling of the trial court on the objection after the witness's answer is not preserved for appellate review in the absence of a motion to strike. *Id.*

■ Further in his point on appeal, defendant again expands the grounds for his objection from the actual objection at trial. Defendant's objection at trial was that the answer was not responsive to the question. He expands the objection on appeal by arguing that the answer constituted evidence

of Perkins' good character when it was not in issue. As discussed under defendant's first point, additional or expanded allegations of trial court error from that raised at trial, will not be reviewed. Defendant's second point is denied.

In his third point, defendant claims the trial court erred by giving Instruction No. 8 which he contends prejudicially deviated from MAI–CR3d 306.06 and its Notes on Use 4(b). The language in Instruction No. 8 that defendant objects to is as follows:

> *If the defendant was not the initial aggressor in the encounter with Ronald Perkins,* and if the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of Ronald Perkins, and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense and must be found not guilty.

(emphasis added).

Defendant argues it is prejudicial error to refer to the defendant as the initial aggressor when there is no evidence to support the submission.

■ Defendant requested that Instruction No. 8 be given. He did not object to it at the time of its submission or in his motion for new trial. Consequently, this point of error has not been preserved for appellate review. *State v. Preston,* 673 S.W.2d 1, 9 (Mo. banc 1984). Since the instruction was given at defendant's request, he cannot now complain that the instruction is erroneous or prejudicial to him. *Id.* We have reviewed for plain error and find no error, plain or otherwise. Defendant's third point is denied.

Finally, we address defendant's claim that the trial court erred by overruling defendant's motion to quash the jury panel after the State used three of its peremptory strikes to remove some of the blacks from the panel. Defendant is a black male.

Purposeful racial discrimination violates a defendant's right to equal protection. *Strauder v. West Virginia,* 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880). *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90

L.Ed.2d 69 (1986), articulates a realistic evidentiary standard for a defendant to prove purposeful discrimination. *State v. Herron*, 745 S.W.2d 835, 836 (E.D.Mo.App. 1988).

*State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), provides guidelines for trial courts in deciding *Batson* issues. Both *Batson* and *Antwine* have been discussed at length in numerous Missouri appellate opinions. We decline to reiterate the in-depth analysis set forth in those cases.

After challenges for cause in this case, the venire consisted of twenty-eight prospective jurors, ten blacks and eighteen whites. The defendant used one of his peremptory challenges to remove a black; the prosecutor used three of his peremptory challenges to remove blacks. Defendant was tried before a jury consisting of five blacks, and seven whites, with a black alternate. The alternate juror was not needed to return the verdict.

The prosecutor explained, on record, his reasons for using three strikes against black jurors. He explained that he had challenged Juror No. 1 because she was employed as a domestic and her quiet demeanor indicated to him that she would not be an independent thinker; that he had challenged Juror No. 5 because of her quiet, withdrawn demeanor indicating to him that she would not be an independent thinker; and that he had challenged Juror No. 40 because she was an older woman employed as a domestic who he thought would not think independently of other jurors. The prosecutor explained that he did not want jurors in this case who could not think independently. The State was asking for a first degree murder conviction and the prosecutor thought the defense would try to lower the conviction, if any, to a lesser included offense. The prosecutor stated that he wanted strong independent thinkers who would not go along with the crowd and compromise by convicting defendant on a lesser included offense. De-

fense counsel did not explain his reason for his challenge of a black juror.

■ Defendant objected to the State's use of peremptory strikes against three blacks. Although he bore the ultimate burden of proving a constitutional violation, he did not specify why striking these three black veniremen raised an inference that the State had stricken them based upon their race. He merely stated that Juror No. 257, a white juror, also had a quiet demeanor.

The State gave race neutral, case specific reasons for its peremptory strikes against three black veniremen. The common characteristic given as the basis for the peremptory strikes was that each had a quiet demeanor indicating to him that they would not be independent thinkers. The State's position was that it needed jurors who could think independently and not compromise in order to obtain a conviction of first degree murder. These reasons do not, ipso facto, indicate racial discrimination. Thus, defendant failed to prove facts and other relevant circumstances necessary to establish a prima facie case of racial discrimination. *Batson*, 106 S.Ct. at 1723. Even if we assume that defendant made a prima facie case of discrimination, he failed to rebut the validity of the reasons given by the State as required by *Batson*.

Finally, the State's strikes were not disproportionate to the number of blacks on the venire. The State did not use all its strikes against blacks nor were all blacks removed from the jury. *See State v. White*, 750 S.W.2d 587 at 588–89 (E.D.Mo. App.1988). Defendant was actually tried and convicted before a jury composed of a greater percentage of blacks than there were on the jury panel. *See, e.g., State v. Crump*, 747 S.W.2d 193 (E.D.Mo.App. 1988).

We conclude that the trial court's refusal to quash the jury panel was not clearly erroneous.[2] Defendant's final point on appeal is denied.

---

2. Although the trial judge did not make specific findings of fact as required by *Antwine*, he made an extensive record which indicates he exercised his discretion in denying defendant's

motion to quash the jury panel. Further, there are readily discernible reasons in the record for the State's peremptory challenges of blacks and an absence of a record by defendant that rebut-

The judgment of the trial court is affirmed.

SIMON, P.J., and GRIMM, J., concur.

ted the legitimacy of the reasons for those challenges. *See, e.g., State v. Hood,* 745 S.W.2d 785

(E.D.Mo.App.1988); *compare State v. Herron,* 745 S.W.2d 835 (E.D.Mo.App.1988).