STATE of Missouri, Respondent,

v.

Michael Anthony SHAW, Appellant.

No. 63121.

Supreme Court of Missouri,
Division No. 1.

Feb. 23, 1983.

Morton L. Schwartz, St. Louis County, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES R. REINHARD, Special Judge.

Appellant Michael Shaw was convicted by a jury of capital murder and sentenced to a term of life imprisonment without probation or parole for fifty years. Jurisdiction is vested in this Court pursuant to Mo. Const. Art. V, § 3.

On May 14, 1980, appellant and a companion, Jessie Houston, Jr., went into a store to steal cigarettes. After they came out of the store, Houston asked appellant

why he had not taken any cigarettes. Appellant replied that he did not steal, "robbery was his thing." Later that afternoon, appellant asked Houston to rob a store with him. He told Houston the store was run by a foreigner, and he did not want to rob the store alone because the store owner knew him. According to Houston, appellant was to act as a decoy while Houston robbed the store. Houston refused to participate in the robbery.

That afternoon, appellant saw an acquaintance, Christopher Reed, in a car with two other men. Appellant got into the car with Reed and his friends and asked them for a ride home. On the way, appellant asked Reed to help him rob a store located around the corner from appellant's house. He asked Reed to keep a lookout for him while he committed the robbery. The men arrived at appellant's house, and appellant went inside and came out with a butcher knife which he stuck down his pants.

Reed and appellant walked to the store. Reed stayed outside while appellant went into the store. Reed went inside a few minutes later and observed appellant talking with a man standing behind the counter. Reed made a small purchase and left. Appellant came out and said he going back in to "take care" of the man, and he asked Reed to help get the money out of the cash register. When Reed went back into the store, he saw appellant pounding on the cash register which was stuck. Reed also saw the man lying in the corner bleeding. Reed and appellant managed to open the cash register, and they took some money and approximately twenty or thirty cartons of cigarettes. Just before the pair left the store, Reed saw appellant stab the victim five or six times. Reed and his friends drove appellant to the corner of Delmar and Hamilton and left him there.

Appellant called his girlfriend, Mary, and asked her to pick him up at the corner of Delmar and Hamilton. When she arrived, appellant had a grocery bag which he said contained cigarettes. Around 10:30 that evening, Mary and appellant picked up Nathan, a friend of appellant. Appellant directed Mary to drive past Ead's Market. There were police cars in front of the store. Appellant told Nathan that demonstrated what appellant could do. After taking Nathan home, appellant and Mary returned to Mary's house where appellant spent the night. Appellant told Mary he had committed a robbery. After appellant was arrested, Mary visited him in jail, and he asked her not to testify against him.

Appellant was arrested and charged in a two-count indictment with capital murder and first degree murder in connection with the death of Jahed Makhamred, the proprietor of Ead's Market. The victim, a Jordanian, was discovered behind the counter, stabbed. The autopsy revealed the victim had received a blow to the left side of his head and had a cluster of ten stab wounds in the right anterior chest. Any one of the stab wounds was sufficiently severe to have caused death. Appellant's palm print was found on the cash register in Ead's Market.

## I.

Appellant contends there was insufficient evidence to support a conviction of either capital murder or first degree murder because no murder weapon was produced and two of the state's witnesses were not credible. In determining the sufficiency of the evidence, we accept as true all evidence and inferences favorable to the state, and we disregard all evidence and inferences to the contrary. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). The evidence recited above was sufficient to support the appellant's conviction.

Reed testified that he had bargained for a reduction in charges and sentence in exchange for his testimony against appellant. Houston, the other witness, testified that he spoke to the police in order to prevent the police from arresting him for the murder. That a witness has something substantial to gain by testifying against a criminal defendant does not render his or her testimony inadmissible. Rather, a witness' motives affect the weight and credibility of the

testimony, and those are matters for the jury to determine. *State v. Jackson,* 608 S.W.2d 420, 421 (Mo.1980). This Court does not weigh the evidence. *State v. Brooks,* 618 S.W.2d 22, 23 (Mo. banc 1981).

The appellant cites no authority to support his argument that the state failed to make a submissible case because it failed to produce the murder weapon. Neither have we found any such authority. The state's inability to produce the murder weapon does not affect the submissibility of the case. *See State v. Ruck,* 194 Mo. 416, 92 S.W. 706, 711 (Mo.App.1906).

## II.

■ Appellant alleges the trial court erred by permitting the state to indict and try him on both murder and armed robbery charges. He argues that because both charges arose out of the same set of facts, his indictment, trial, and conviction of both subjected him to double jeopardy in violation of the Fifth Amendment to the United States Constitution. Appellant was tried in March of 1981 on only the murder charge and, at that time, admitted he had been neither tried nor convicted on the robbery charge.

Appellant relies on *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), in which the United States Supreme Court held that a person who has been tried and convicted for a crime that has various included incidents cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense. We find, however, without making any judgment about the validity of appellant's claim of double jeopardy, that his claim is not cognizable in this appeal. The double jeopardy clause prohibits a second prosecution for an offense after a conviction for the same offense. *State ex rel. Westfall v. Campbell,* 637 S.W.2d 94, 96 (Mo.App.1982). It does not affect the validity of the first conviction. The murder conviction that is the subject of this appeal was the first prosecution arising out of the incident in question and, therefore, did not subject appellant to double jeopardy. His claim of double jeopardy must be raised in the second prosecution arising out of this incident.

## III.

■ Appellant also maintains the trial court erred in not granting his request for an order for a second psychiatric evaluation. Appellant made his request on the first day of the trial, several months after the first psychiatric evaluation. Both § 552.020.5, RSMo.Supp.1982 (effective 1980), which deals with mental incapacity to stand trial, and § 552.030.4, RSMo.Supp.1982 (effective 1980), which deals with insanity as a defense, provide an accused is entitled to a second psychiatric examination if he or she requests it within five days after receiving the report from the first examination. Appellant admits his request was not timely made. Because appellant's request for a second examination was untimely and because there were no circumstances rendering the first psychiatric opinion suspect, the court did not abuse its discretion in denying appellant's request. *See Thornton v. State,* 614 S.W.2d 724, 725 (Mo.App.1981); *State v. Collier,* 624 S.W.2d 30, 33 (Mo.App.1981).

## IV.

■ Appellant also claims the court erred in refusing to give an instruction on the defense of insanity. Appellant alleges the instruction is a fundamental right under the Fourteenth Amendment to the Constitution of the United States.

Section 552.030.7, RSMo.Supp.1982 (effective 1980), provides that whether a person had a mental disease or defect excluding responsibility for his conduct is an issue for the jury to decide upon the introduction of substantial evidence of such disease or defect. In the instant case, no such evidence was introduced. The testimony of the psychiatrist who had examined appellant before the trial was the only evidence relevant to the issue of mental disease or defect. The psychiatrist, called as a witness by appellant, testified that, at the time of the killing, appellant was free from mental disease or defect. In the absence of any

evidence showing mental disease or defect, the court did not err in refusing to give an insanity instruction. MAI CR2d 2.33; *State v. Thomas,* 625 S.W.2d 115, 124 (Mo. 1981).

## V.

 Appellant also contends he was denied a fair trial because all the jurors were white.

In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

Appellant proffers no statistics, but merely states that there was a smaller percentage of blacks on the jury panel than in the overall population of St. Louis County. This Court has been and remains reluctant to find systematic exclusion absent a statistical showing of such exclusion. *State v. Reese,* 625 S.W.2d 130, 132–33 (Mo. banc 1981). Furthermore, systematic exclusion of a distinctive group is not established by the nonrepresentation or underrepresentation of the group on a particular jury panel. *State v. Ball,* 622 S.W.2d 285, 291 (Mo.App. 1981). This point is without merit.

## VI.

Finally, appellant contends the trial court erroneously permitted the prosecutor to ask leading and suggestive questions and erroneously permitted the prosecutor to repeat answers given by witnesses. While the prosecutor did ask various leading questions and did repeat some answers given by witnesses, this is not grounds for reversal. Only timely made and adversely ruled objections may be raised as error on appeal. *State v. Jackson,* 500 S.W.2d 306, 314 (Mo.

App.1973). The trial court sustained appellant's objections to the prosecutor's leading questions and to his restatement of witnesses' answers. Appellant requested no other relief. This point presents no reversible error.

Judgment affirmed.

GUNN, P.J., RENDLEN, C.J., and CRANDALL, Special Judge, concur.

BILLINGS and DONNELLY, JJ., not sitting.