STATE of Missouri,
Plaintiff–Respondent,

v.

Ronald Kim JORDAN,
Defendant–Appellant.

No. 52447.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 25, 1988.

Doris Gregory Black, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., L. Timothy Wilson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Appellant, Ronald Jordan, appeals conviction by jury of murder in the first degree, Section 565.020 RSMo 1986, assault in the first degree, Section 565.050 RSMo 1986, and armed criminal action, Section 571.015 RSMo 1986. Appellant was sentenced to life without probation or parole for murder in the first degree, to life for armed criminal action, said sentences to run consecutively[1] and to ten (10) years imprisonment for assault in the first degree, said sentence to run concurrently with the life sentences imposed. Jurisdiction is vested in this court pursuant to Missouri Constitution Article V, Section 3.

The evidence, when viewed in the light most favorable to the verdict[2], is as follows. On January 28, 1986, appellant phoned Mark Esters stating that he had an apartment available to rent in a four-plex

---

1. The record indicates that appellant's life sentences are to run consecutively, not *concurrently* as per appellant's brief.

2. With regard to appellant's statement of facts, we remind counsel of Rule 84.04(c). In part, the rule requires that "[t]he statement of facts shall be a *fair* and *concise* statement of the facts *relevant* to the questions presented for determination without argument." (our emphasis).

owned by his family and located in the 5700 block of St. Louis Avenue in the City of St. Louis. Esters, who previously had expressed an interest in renting the apartment, told appellant that he wished to see the unit before he made a decision. Thereafter, Mark Esters and his brother, Harry McCarter, went to see the apartment. After viewing the unit, Esters told appellant he wanted to rent the apartment and agreed to pay $200 per month rent, in addition to a $200 security deposit.

On January 29, 1986, Mark Esters returned to appellant's home, intending to clean the apartment prior to moving in. He had forgotten any cleaning supplies and, instead, took appellant with him to change the oil in Esters' girlfriend's car. The two then went to the home of Mark Esters' mother where they met with Harry McCarter, Cheryl Noack, and two other friends. The six returned to appellant's home, stayed for a short time and then all departed except for appellant. Esters and Noack intended to return later that evening and clean the apartment.

Esters returned to appellant's apartment about 11:00 p.m., intending to clean the apartment unit. Cheryl Noack was already at appellant's apartment. Appellant could not find the key to the unit, and apparently in light of the late hour, suggested that Esters spend the night at his apartment and begin cleaning in the morning. Cheryl Noack left for the evening. Appellant's girlfriend, Pam Farmer, was also in the apartment and spent the night.

The following morning, January 30, 1986, at approximately 6:30 a.m., Mark Esters was awakened by the sound of appellant answering the door bell and inviting Cheryl Noack inside. Appellant returned to his bedroom to go back to sleep. Esters and Noack remained in the living room on the couch where they both fell asleep. After awaking for the second time about 8:00–8:30 a.m., appellant, Noack and Esters went in the kitchen for coffee. Noack then went into the bathroom to comb and curl her hair. Pam Farmer was in appellant's bedroom.

At approximately the same time, Harry McCarter came to appellant's apartment. Appellant answered the door and invited McCarter into the kitchen for coffee. Shortly thereafter, appellant went outside for about ten minutes, returned, received a phone call and then went into his bedroom. Esters and McCarter remained in the kitchen drinking coffee. Noack was still in the bathroom and Farmer remained in appellant's bedroom. Within a few minutes, at approximately 9:00 a.m., appellant returned to the kitchen with a gun in each hand and without any explanation began screaming vulgarities and ordered everyone out of his house.

McCarter and Esters headed towards the front door of the apartment but could not open the door without a key. Appellant threw the keys to McCarter who opened the door and threw the keys back to appellant. At that point appellant began firing at both men. Neither Esters nor McCarter were armed.

McCarter was hit by several of the bullets. The impact thrust McCarter halfway out the front door. As appellant began shooting Esters found cover behind a stereo system located next to the door. Appellant repeatedly fired in the direction of Esters and McCarter until both guns were empty. At one point, appellant stood directly over Esters and, pointing a gun at him, began clicking one of the guns, but it was empty. Cheryl Noack was still in the bathroom.

Appellant then went into his bedroom and began loading a rifle. As Esters attempted to move McCarter out of the house, appellant returned to the living room with a rifle. Esters fled. Appellant attempted to follow Esters outside and through an alley but was unsuccessful.

While appellant was outside, Pam Farmer and Cheryl Noack entered the living room where the shooting had occurred. Gloria Jordan, appellant's mother who lived in the apartment directly above appellant's, also entered the living room. McCarter, who was half-inside and half-outside the apartment, was pulled inside. Noack attempted to resuscitate McCarter but when

told by Pam Farmer that appellant was going to kill her too, Noack fled to the upstairs apartment occupied by appellant's mother. During this time Cheryl Noack observed appellant's mother and another man gathering the weapons and certain bottles, which were taken upstairs to Ms. Jordan's apartment. Once in Ms. Jordan's apartment, Cheryl Noack phoned the police and then hid in a closet where she remained until the police arrived.

Eventually, appellant was apprehended and a search of the entire premises was conducted. The physical evidence seized by the police and the testimony of state's witnesses at trial corroborated the testimony of Mark Esters and Cheryl Noack, and linked appellant to the shooting death of Harry McCarter.

Appellant testified in his own behalf. He admitted to killing Harry McCarter, but he denied the charges pending against him, claiming that he had shot at McCarter and Esters in self-defense. In support of his theory, appellant presented three additional witnesses. Ultimately, the jury found appellant guilty of murder in the first degree, assault in the first degree and armed criminal action. Appellant appeals the convictions and sentences. He presents twenty-one (21) points on appeal.

Appellant's first (I) and last (XXII)[3] claims of error relate to the trial court's denial of a Motion to Suppress and to the subsequent admission into evidence of photographs taken in appellant's apartment after the shooting had occurred. Specifically, appellant contends that the search of his home was without a warrant and the evidence resulting therefrom namely a photo of a bedroom showing boxes of .45 caliber, .38 caliber and .30 caliber bullets on top of a dresser, as well as admitting the actual boxes of bullets—were the fruit of an illegal search and seizure. In support of his claim, appellant alleges: (1) the offenses charged did not occur in the bedroom, (2) appellant had surrendered from another apartment so that no search was

made for the benefit of self-protection of the officers, and, (3) the bullets actually were located inside appellant's closed drawer prior to his arrest and were not subject to seizure.

When a pretrial motion to suppress is filed and overruled, the defendant must, in order to preserve the issue, make specific objections to the items when they are offered into evidence at trial. *State v. Matney*, 721 S.W.2d 189, 191[4] (Mo.App.1986); *State v. Summers*, 660 S.W.2d 772, 773[1] (Mo.App.1983). Failure to keep the question alive by asserting timely and proper objections throughout the trial results in the failure of defendant to thereafter, on appeal, attack the validity of the search and the admissibility of the fruits of that search. *State v. Anderson*, 698 S.W.2d 849, 851[1–3] (Mo. banc 1985), *see also* Rule 34.01; Section 542.296 RSMo 1986.

In the present case, defendant's motion to suppress was overruled. Thereafter, police officer John Logan testified. He stated that he recognized the items shown in several State's Exhibits, photographs, and that the photos were close-up views of a chest of drawers with several boxes of cartridges on top of the dresser. He identified the boxes as a box of .38 caliber special ammunition, a box of .30 caliber carbine Harver bullets, a box of .44 Magnum bullets, and a box of .45 caliber automatic ammunition. He also stated that the photographs accurately reflected the way the items were positioned when he entered defendant's apartment on January 30, 1986. Defense counsel made an objection but it was on the basis that the chain of custody had not been met. This objection was overruled and has not been preserved for our consideration on appeal. No other objection based upon the grounds asserted in the motion to suppress was raised.

Thereafter, police officer Frank Stubits testified. He also identified the photographs and the live ammunition recovered from appellant's bedroom dresser. He tes-

**3.** Although there are actually twenty-one (21) issues raised, appellant's brief is numbered I–XXII. Appellant's brief omits point XIX. For the sake of convenience we shall utilize appellant's numbering.

tified on cross-examination in response to questions posed by defense counsel that the ammunition was found on top of the dresser located in the rear bedroom of appellant's apartment. He also described the specific ammunition found. It was not until all of the state's witnesses had testified and the state moved to admit the exhibits (namely the photos taken at the scene and the actual boxes found) that defense counsel objected to the close-up photographs showing the ammunition to be on the top of the dresser.

The admission of photographs which have previously been identified and described by testimony without objection was merely cumulative and not prejudicial. *See e.g., State v. Moss*, 700 S.W.2d 501, 503[3] (Mo.App.1985). Accordingly, because appellant failed to object to the introduction into evidence of the questioned articles when they were identified and described by the witnesses at trial, he has failed to preserve the error for our review. *See, State v. Harrinton*, 679 S.W.2d 906, 907[2] (Mo. App.1984). Our review of appellant's contentions under plain error, Rule 30.20, discloses no error, plain or otherwise. Points one and twenty-two are denied.

■ Appellant's second point (II) alleges trial court error:

... IN DENYING DEFENSE'S MOTION TO STRIKE THE ENTIRE JURY WHOSE COMPOSITION WAS ONLY 11% BLACK WHEN THE POPULATION OF BLACKS IN THE CITY OF ST. LOUIS IS APPROXIMATELY 45% AND THE JURY'S COMPOSITION WAS DISPROPORTIONATELY REPRESENTATIVE OF THE RATIO OF BLACKS IN THE CITY POPULATION AS TO DENY DEFENDANT A RIGHT TO A JURY OF HIS PEERS IN VIOLATION OF THE EIGHTH AMENDMENT[.]

The only authority cited for this proposition is "*Batsen [sic] v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, [90 L.Ed.2d 69] (1986)."

This claim is without merit. First, appellant is claiming that the selection of the venire violated his constitutional right to a jury drawn from a fair cross-section of the community as provided by the *Sixth* (not Eighth) Amendment to the Constitution. This is not the subject matter of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* involved only the application of equal protection principles. The Supreme Court expressly declined to consider any Sixth Amendment issues. *Batson*, 106 S.Ct. at 1716, n. 4.

Second, appellant's claim is devoid of any factual support on the record. Appellant failed to present any evidence, statistical or otherwise, to support the statements made by defense counsel regarding the motion to strike the jury panel. We have only bare assertions that there was a small percentage of blacks on the jury panel compared to the overall black population in the City of St. Louis.

We are mindful that:

"[t]he charge that a jury panel is unconstitutionally structured, while easy to level, is not self-proving. Those who advocate such a charge carry a heavy burden when the time to substantiate it comes."

*State v. Harris*, 670 S.W.2d 73, 80 (Mo. App.1984). Our courts have been reluctant to find systematic exclusion absent a statistical showing of such exclusion. *State v. Shaw*, 646 S.W.2d 52, 55 (Mo.1983). However, statistics indicating a disparate impact, standing alone, seldom suffice to establish an equal protection claim. *State v. Mallett*, 732 S.W.2d 527, 538 (Mo. banc 1987). Moreover, the systematic exclusion of a distinctive group is not established by the under-representation or nonrepresentative of the group on a particular jury panel. *Id. See also, State v. Baker*, 636 S.W.2d 902, 910[15] (Mo. banc 1982). A defendant has no right to a jury of any particular racial composition. *Mallett*, 732 S.W.2d at 540 (citing *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975); *State v. Blair*, 638 S.W.2d 739, 753 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983).

In summary, appellant has failed to show: (1) that the group alleged to be excluded was a distinctive class in the community, (2) that the representation of this

class in the venire failed to fairly and reasonably relate to their numbers in the community, and, (3) of more direct importance in the present case, that this under-representation was due to systematic exclusion of the class in the jury selection process. *State v. Ruff,* 729 S.W.2d 556, 558[9] (Mo. App.1987). (Citation omitted). Appellant has failed to sustain his constitutional challenge. Point II denied.

■ Appellant's fourth (IV) point contests the adequacy of the state's opening statement in establishing the charge of robbery in the first degree. Specifically, appellant argues that the trial court erred in denying his motion for directed verdict as to the charge of robbery in the first degree, contending that the state's opening statement was insufficient because it lacked evidentiary basis to try appellant for the robbery charge.

We cannot review this claim of error on the merits because appellant has neglected to provide this court with a record of the state's opening statement. Rule 30.04(h): Rule 30.06(e). It is appellant's responsibility to provide this court with a transcript sufficient to allow us to review his claims of error. *Lassen v. State,* 717 S.W.2d 538, 539 (Mo.App.1986). No steps have been taken, either by stipulation or otherwise, to supply the omission or cure the defect. *Id.* By reason thereof, appellant has failed to preserve the point for appellate review. *See also, State v. W.F.W.,* 721 S.W.2d 145, 151 (Mo.App.1986).

■ We note, however, that even if appellant had provided us with an adequate record, his point would be of no consequence because the jury specifically found him not guilty of the charge of robbery in the first degree. A defendant may not complain of trial error committed in his favor. *See e.g. State v. George,* 717 S.W. 2d 857, 861 (Mo.App.1986). Accordingly, appellant's point IV is denied.

Appellant's point five (V) claims the trial court erred in failing to dismiss the charge of assault in the first degree because "[Mark] Esters was never shot nor could or did the evidence establish that he was [.]."

This point is similarly without merit. First, we note that when assessing a challenge to the sufficiency of the evidence, the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and all evidence and inferences contrary to the verdict are ignored. *Mallett,* 732 S.W. 2d at 530. In this respect, appellant's focus on the version of facts as elicited during his testimony is misplaced.

■ Second, appellant's argument, that pursuant to Section 565.050 RSMo 1986 the state was "required to establish that Mark Esters sustained 'serious physical injuries'," conveniently, and seemingly, consciously misstates the law relevant to assault in the first degree. Pursuant to Section 565.050.1 RSMo 1986, a person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or *attempts to cause serious physical injury* to another person. The state was not required to establish that Mark Esters sustained serious physical injury. Rather, it was incumbent upon the state to establish that appellant attempted to kill or cause serious physical injury to Mark Esters.

■ The record is replete with evidence sufficient to support a conviction for assault in the first degree. The state's evidence established: (1) that appellant stood directly over Esters, who was hiding behind the stereo, and began clicking the gun and only failed to hit Esters because the gun was empty, (2) that the stereo unit behind which Esters was hiding contained a bullet hole, *and,* (3) that appellant repeatedly fired at Harry McCarter and Mark Esters, and although Esters did not sustain any physical injuries, he easily could have been shot, wounded or killed. Appellant's argument, which is factually premised on a requirement that Esters sustain serious physical injury, fails. Point V denied.

■ Appellant's next point (Point VI) alleges that the trial court erred in overruling his objections to permitting Cheryl Noack to testify for the state. Appellant contends that the state failed to timely disclose Ms. Noack's prior criminal record

and he was thereby denied the opportunity to adequately prepare his case prior to trial.

This contention has not been properly preserved for our review. First, no objection was made to the testimony of Cheryl Noack, nor did appellant ever move to strike her testimony. An objection which is made after the question is asked and answered is untimely, and in the absence of a motion to strike the answer, the ruling of the trial court on the objection is not preserved for appellate review. *Moss*, 700 S.W.2d at 503. (Citations omitted).

We may only accord appellant's point a "plain error" review pursuant to Rule 30.-20. Under that standard and in light of the facts that (1) the record indicates that the motion to compel discovery was withdrawn by appellant's counsel prior to trial and never subsequently refiled, and, (2) at the time of trial the prosecutor informed both appellant and the trial court that Ms. Noack did not have any prior convictions, we cannot say that manifest injustice or miscarriage of justice has occurred. Appellant's point VI is denied.

Appellant's next claim, point VII, alleges that:

[T]HE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR MISTRIAL AND OBJECTIONS TO THE ALLEGED STATEMENT OF CHERYL NOACK THAT PAM FARMER, DEFENDANT'S GIRLFRIEND, TOLD NOACK "TO RUN BEFORE RONALD SHOOTS HER [sic] TOO" AS THIS WAS BLATANT HEARSAY[,] IMMATERIAL, UNRESPONSIVE AND EXTREMELY PREJUDICIAL ONCE GIVEN, AS THERE WAS NOT EVIDENCE THAT DEFENDANT HAD SHOT OR ATTEMPTED TO SHOOT CHERYL NOACK AND WHERE SUCH EVIDENCE WAS DESIGNED TO INFLAME THE JURY [.]

Appellant argues that the statement was used by the prosecutor for the sole purpose of inflaming the jury and that, because appellant was prejudiced by Noack's testimony, the trial court committed reversible error.

■ We disagree. The rule against admissibility of hearsay statements is inapplicable where testimony is offered in explanation of conduct rather than as proof of the matters or facts asserted therein. *Mallett*, 723 S.W.2d at 536; *State v. Clay*, 686 S.W.2d 516, 518 (Mo.App.1985).

■ Viewed in its relevant context, Cheryl Noack testified to the following as a witness for the state on direct examination:

Q. [Prosecutor]: Now, did you leave Harry [McCarter] at some point in time?

A. [Cheryl Noack]: Yes, whenever Pam told me to get up—

[Defense Counsel] Objection, that's hearsay.

[The Court]: Be sustained.

[Prosecutor]: Excuse me. It's part of the crime here.

[Defense Counsel]: Your Honor, it's not. May we approach the bench.

[Following a bench conference, the trial court overruled appellant's motion for a mistrial and objections to Ms. Noack's testimony.]

(Proceedings returned to open court.)

Q. (Prosecutor) All right. Miss Noack, we're at the point where the body is pulled back inside and you're there and then you stop giving—helping him. Did you leave that apartment?

A. Yes, I went upstairs.

Q. Where did you go?

A. Upstairs.

 * * * * * *

Q. Why did you go upstairs?

A. Because Pamela told me to run, that Ronald was going to kill me.

Q. Did you run?

A. Yes.

We conclude from our reading of the record that the testimony of Cheryl Noack was admitted by the trial court not as proof of the matter asserted therein (that appellant, Ronald Jordan, actually intended to kill Cheryl Noack), but as explanation for Ms. Noack's reason for fleeing the scene of the crime and hiding in a closet in Gloria

Jordans' upstairs apartment. We find no error. Point VII denied.

As to appellant's points VI, VIII, XI, XIII, XV and XXI we find that an extended discussion would serve no jurisprudential purpose. We note only that appellant's brief is devoid of any page references to the transcript in the argument portion of the brief and cannot be properly examined without a thorough review of the trial record. Rule 30.06(h); *see also State v. Cheeks*, 604 S.W.2d 30, 32 (Mo.App.1980). We have done so as a matter of choice although there is no duty to render this service. We also note, that appellant's arguments relating to each of these points are very brief, abstract, entirely conclusory, and in violation of Rule 30.06(e). *See, State v. Gamble*, 649 S.W.2d 573, 576 (Mo. App.1983). Accordingly, these points have not been properly preserved for our review. Our study supports a finding that no plain error resulting in a manifest injustice or miscarriage of justice has resulted. Rule 30.20. Points VI, VIII, XI, XIII, XV, and XXI are denied.

Appellant's next two claims, points IX and X, may be considered together. Appellant asserts:

IX. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO STATE'S EXHIBIT 99, PHOTOCOPIES OF MONEY TAKEN FROM DEFENDANT WHERE THE BEST EVIDENCE WAS THE ACTUAL MONEY AND THERE WAS NO ACTUAL PROOF THAT THE MONEY IN THE PHOTOS WAS THE ACTUAL MONEY TAKEN FROM DEFENDANT [;] and,

X. THE TRIAL COURT ERRED IN OVERRULING DEFENSE OBJECTIONS TO WITNESSES ESTERS' AND HENDRICKS' TESTIMONY AS TO EXHIBIT 99 AS PHOTOCOPIES OF MONEY ALLEGEDLY TAKEN FROM DEFENDANT WAS NOT THE BEST EVIDENCE. AND ESTERS DID NOT, HIMSELF, WITNESS THE

PHOTOCOPYING OF THE MONEY[.]

In support of both propositions, appellant relies upon *State v. Cameron*, 604 S.W.2d 653 (Mo.App.1980).

For several reasons, these arguments are without merit. First, we note that counsel would be well-advised to read *State v. Cameron*, 604 S.W.2d 653 (Mo. App.1980) beyond the headnotes. The actual holding of *Cameron*, pertinent to the best evidence rule, is that, in that particular case, the rule had no application whatsoever. Therein the court stated:

... Defendant misinterprets and misapplies the best evidence rules. When the terms or contents of a writing are in issue, the best evidence rule does require the production of the original writing itself and the rule does reject other evidence unless and until the failure to produce the original was satisfactorily explained. McCormick, Handbook of the Law of Evidence, Chap. 23 (2d Ed. 1972). The obvious purpose of the rule is to prevent fraud and the likelihood of mistake when proving the terms or contents of a writing. See, e.g. *F.C. Preuitt Contr. Co., Inc. v. Doty*, 536 S.W.2d 908, 914 (Mo.App.1976). *However*, when the terms and contents of a writing are not in issue, application of the rule serves no meaningful purpose and, the rule serves no meaningful purpose and, does not apply. *State v. Curry*, 473 S.W.2d 747, 748 (Mo.1971). *Wilborn v. Williams*, 555 S.W.2d 44, 45–46 (Mo.App.1977). Officer Lloyd's testimony was not offered to prove the truth of the contents of the radio log, but rather to establish the fact that the alarm sounded at a specific time and for a certain location. These latter facts existed independently of the tapes and logs which recorded the facts. Thus, *the best evidence rule is not applicable here.* (Our emphasis).

*Cameron*, 604 S.W.2d at 660. Accordingly, we are not persuaded by appellant's contentions that the trial court committed reversible error in light of counsel's perception of the holding in *Cameron* "that [the court] would not allow secondary evidence

where the state fails to give an adequate explanation as to why the original is not produced" and "where it was established that the production of the evidence itself is the best evidence to prevent fraud and the likelihood of mistake." Appellant's arguments that his objections to the photographs of the money should not have been overruled "as there was no way to establish that the money in the photographs was the money allegedly taken for [sic] McCarter" are without merit.

Second, we reiterate our discussion relative to appellant's point IV wherein we found appellant's point was of no consequence because he was found not guilty of robbery in the first degree. The same reasoning controls our treatment of appellant's points IX and X. Any error which may or may not have occurred relative to the trial court's admission of photographs depicting the money allegedly stolen from Harry McCarter is not subject to review on appeal where defendant was found not guilty of the charge to which the evidence pertained. *See e.g. State v. Lowery,* 565 S.W.2d 680, 683 (Mo.App.1978).

■ Third, we note that application of the best evidence rule is not required under these particular facts where two witnesses are testifying to facts which are also contained in a writing. *State v. Kirksey,* 727 S.W.2d 201, 203 (Mo.App.1987); *State v. Brown,* 660 S.W.2d 694, 699 (Mo. banc 1983). Here, police officer Jackie Hendricks testified that upon taking appellant into custody, the officer seized $429.29 from appellant which purportedly belonged to Mark Esters' deceased brother, Harry McCarter; he photocopied the money seized from appellant; he subsequently gave the money to Mark Esters; and he stated that the challenged photocopies fairly and accurately depicted the actual money that he seized from appellant. Mark Esters corroborated Hendricks' testimony and identified the challenged photocopies as being fair and accurate depictions of the money that he received from Officer Hendricks. Because a fact to be proven (namely the whether or not appellant stole money from Harry McCarter and the amount

thereof) existed independently of a writing (the photocopies of the money), and there was also evidence of such fact in writing (the denomination of money pictured in the photocopy), then both sources, i.e. oral or written evidence, became primary evidence, and the best evidence rule was not applicable in this situation. *Kirksey,* 727 S.W.2d at 203.

Fourth, we note that the thrust of appellant's scant argument is that the money taken from appellant should have been produced, rather than permitting Hendricks and Esters to testify on the subject. This proposition is wholly without merit. Our Supreme Court stated in *Brake v. State,* 460 S.W.2d 639, 641 (Mo.1970):

> The objection that the money taken from [appellant] should have been produced, rather than permitting the officer's testimony on the subject, is without merit. In *Kilrain v. State,* 166 Tex.Cr. R. 265, 313 S.W.2d 299, 300[2], a similar contention was raised and answered: 'Appellant next contends that the court erred in permitting the officers to testify as to the money which they found because the money itself was the best evidence. In *Dixon v. State,* 108 Tex.Cr.R. 650, 2 S.W.2d 272, 273, Judge Lattimore said, "We do not think the man who testifies that he found a horse must produce the horse before the jury before his testimony will be received.' "

(Citing *State v. Coleman,* 441 S.W.2d 46, 52 (Mo.1969). The same reasoning applies here.

For all of the above reasons, appellant's points IX and X are denied.

We next consider appellant's point XII wherein he claims that the trial court erred in not permitting officer Frank Stubits to render an expert opinion as to whether "a person holding a firearm he was not accustomed to firing might not effect his aim if the firearm is held in the left hand of a right handed person." This point is similarly without merit.

■ In general, a witness qualifies as an expert if, by reason of education or special experience, he possesses superior knowledge respecting a subject about

which persons who have no particular training are incapable of forming an accurate opinion or drawing correct conclusions. *State v. Garrett,* 682 S.W.2d 153, 155 (Mo. App.1984). The admissibility of expert testimony in a given situation is left to the sound discretion of the trial court and will not be disturbed on appeal in the absence of a clear abuse of discretion. *State v. Marks,* 721 S.W.2d 51, 55 (Mo.App.1986).

As an aid to determining whether the proffered expert testimony would be helpful to the jury, we focus upon whether the subject is one with which lay jurors are likely to be conversant. *Marks,* 721 S.W.2d at 55–56. If the subject at issue is one of everyday human experience, then the opinion testimony is properly rejected. *Id.* (Citation omitted).

Applying these principles we cannot say that the trial court abused its discretion in failing to permit officer Stubits to answer the posed hypothetical question. Everyday human experience tells us that a right-handed person who is unaccustomed to using a weapon and who aims and shoots with his left hand would, most likely, have a diminished or "affected" aim. The jury would certainly know such question contains its own answer. This is not the sort of subject with which typical jurors would be incapable of forming an accurate opinion or drawing correct conclusions. Appellant's point XII is denied.

We turn now to appellant's point XVIII wherein he alleges that the trial court erred in refusing to submit a manslaughter instruction. It is appellant's contention that a manslaughter instruction was required because of the nature of the case—namely a prosecution for murder in the first degree.

This point has no merit. The issue presented herein has not been properly preserved for our review. Rule 30.06(e) requires that if a point relates to the refusal of an instruction, then such instruction shall be set forth in full in the argument portion of the brief. *State v. McClintic,* 731 S.W.2d 853, 857 (Mo.App.1987); *State v. Wayne,* 706 S.W.2d 298, 299 (Mo.App. 1986). Appellant has failed to submit the instruction at issue and thereby has failed to preserve the point for our review. *McClintic,* 731 S.W.2d at 857.

We only review appellant's claim for plain error pursuant to Rule 30.20. The requirement that a manslaughter instruction must automatically be submitted, as per MAI–CR 2d 15.00 series and as detailed in *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975), was repealed by Section 565.025.3, RSMo (Cum.Supp.1983). *State v. Romesburg,* 703 S.W.2d 562, 566 (Mo.App.1985). Section 565.025.1 RSMo 1986 states that with certain exceptions, Section 556.046 RSMo 1986, shall be used for the purpose of consideration of lesser offenses by the trier in all homicide cases. Section 556.046.2 RSMo 1986 provides:

> The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

The lesser offense of voluntary manslaughter is defined as the intentional killing of a human being in the heat of passion, on reasonable provocation. MAI–CR 2d 13.08. *State v. Skinner,* 734 S.W.2d 877, 881 (Mo.App.1987). In this case however, appellant failed to produce any evidence that he shot at Harry McCarter and Mark Esters in the heat of passion. Appellant's entire case was premised on the theory of self defense and that he had not intentionally shot at either Esters or McCarter. Accordingly, since there was no basis in the record, the trial court was not required to submit a manslaughter instruction.

We also emphasize that the jury was instructed upon both murder in the first degree and murder in the second degree, and returned a verdict of guilty of murder in the first degree. The instructions submitted by the trial court provided the jury an opportunity to convict appellant of a lesser included offense, but it declined to do so. With that in mind "it is illogical for us to assume that if a manslaughter instruction had been given then the jury

would have availed itself of the manslaughter option, which would have called for even greater leniency." *See, State v. McIlvoy*, 629 S.W.2d 333, 339 (Mo. banc 1982); *State v. Smith*, 598 S.W.2d 118, 120–21 (Mo.1980). Finding no plain error, we deny appellant's point XVIII.

Appellant contends in point XX that:

The Verdict Entered Is Inconsistent And Contradictory Where Defendant Was Found Guilty of Murder 1st Degree And Not Guilty of Robbery 1st Degree Where The Alleged Motive For The Killing Was Robbery[.]

In support of the above contention, appellant *in toto* argues:

[t]he jury found that defendant caused no serious physical injury to Harry McCarter in the course of attempting to rob him in that they found the·defendant not guilty of robbery first degree. If the robbery was the motive for the killing of Harry McCarter and the jury found the defendant not guilty of robbery, then it was inconsistent of the jurors to find the defendant guilty of first degree murder in that robbery had been negated as the intent of the murder.

Our focus in determining whether a verdict is inconsistent and contradictory is "whether the offense of which defendant was acquitted 'requires proof of an element unique to that crime and distinct from the elements of the offense of which defendant was found guilty'." *State v. Simpson*, 670 S.W.2d 577, 579 (Mo.App. 1984). (Citation omitted). Pursuant to Section 565.020 RSMo 1986, a person commits the crime of murder in the first degree if he *knowingly causes the death* of another person *after deliberation* upon the matter. (Our emphasis). Instruction No. 5 follows the statute and required the jury to find defendant guilty of murder in the first degree if they believed beyond a reasonable doubt that defendant knowingly caused or was aware that his conduct was practically certain to cause the death of Harry McCarter, that defendant did so after deliberation, and that defendant did not

act in lawful self-defense as submitted in Instruction No. 12.

In comparison, a person commits the crime of robbery in the first degree when he *forcibly steals property* and in the course thereof he (1) causes serious physical injury to any person, (2) is armed with a deadly weapon, (3) uses or threatens the immediate use of a dangerous instrument against any person, or, (4) displays or threatens the use of what appears to be a deadly weapon or dangerous instrument. Section 569.020.1 RSMo 1986. The corresponding instruction, No. 10,[4] required the jury to find defendant guilty of robbery in the first degree if it believed beyond a reasonable doubt (1) that defendant stole currency from Harry McCarter, (2) that in doing so the defendant caused serious physical injury to Harry McCarter for the purpose of forcing Harry McCarter to deliver the property, or overcoming resistance of Harry McCarter to the taking of the property, *and*, (3) that in the course of stealing the property, the defendant displayed or threatened the immediate use of what appeared to be a deadly weapon.

The proof necessary to support appellant's conviction for murder in the first degree required an affirmative showing that appellant knowingly caused Harry McCarter's death after deliberation on the matter. The state was not required to prove that appellant forcibly stole property from Harry McCarter or that the murder occurred during the commission of some other felony. In that respect, the elements required for a robbery in the first degree conviction were different and distinct from the proof required for conviction of murder in the first degree. Hence, we cannot say that the verdict was inconsistent and contradictory. Appellant's point XX is denied.

The remaining claims of error can be grouped into two general categories: (1) that the trial court violated appellant's right to equal protection under the Fourteenth Amendment in refusing to quash the jury panel from which it was alleged that blacks had been purposefully excluded, and, (2) that the trial court erred in

4. Patterned after MAI–CR 2d 23.02.

permitting the state to inquire into appellant's employment background, his possible drug-related connections, and the security on his home where such questions were irrelevant to the case at hand and denied appellant a fair trial.

We turn first to appellant's point III contention wherein he alleges that the trial court erred in overruling objections to the state's use of its peremptory challenges when such were used to strike eight black veniremen. Appellant contends that the state failed to give neutral explanations for each venireperson's removal and in doing so, reversible error was committed.

The use of peremptory challenges against members of defendant's race when motivated solely by racial discrimination has been held unconstitutional. *See, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987). The burden is and always remains on the defendant who alleges discriminatory selection of the venire, in contravention of equal protection, to prove the existence of purposeful discrimination. *Batson,* 106 S.Ct. at 1721. (Citations omitted). A black defendant alleging that members of his race have been wrongfully excluded from the venire may make a prima facie case of purposeful discrimination if he is able to show that the totality of circumstances give rise to an inference of discriminatory purpose. *Id.* In proving his prima facie case, defendant may rely on the fact that peremptory challenges constitute a jury selection process that allows those who are of a mind to discriminate, in fact, discriminate. Defendant must also show (1) that he is a member of a cognizable racial group, (2) that the prosecutor used his peremptory challenges to strike members of defendants race, and, (3) that these facts, when combined with all other circumstances give rise to the inference that the prosecutor has excluded the veniremen an account of their race. *Antwine,* 742 S.W.2d at 64; *State v. Jones,* 747 S.W.2d 229, 231 (1988). If defendant establishes a prima facie case of purposeful discrimination then a rebuttable presumption of discrimination arises. *Id.* The state may then overcome

the objection by offering adequate race-neutral reasons for its strikes of black petit jurors. *Batson* 106 S.Ct. at 1712. The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. *Id.* at 1721. The trial court then has the duty to consider the state's explanations in determining whether defendant has established a prima facie case of racially discriminatory use of peremptory challenges. *Antwine,* 743 S.W.2d at 64.

In the instant case we note first, that appellant is black. Second, the state used eight of its ten peremptory challenges to remove blacks from the venire. Thereafter, defense counsel moved to strike the jury panel alleging that the state evidenced a pattern of deliberately excluding black jurors. The prosecutor then explained the reasons for his strikes.

Juror Willie Baker was stricken because she responded and embraced too eagerly the defendant's theory of self-defense. The state also felt that Ms. Baker would associate or identify with the defendant's mother, who was expected to be a key defense witness.

Thalia Smith was stricken because the prosecutor felt that she generally expressed a bad attitude towards the entire judicial system and because of the negative body language she exuded. The state also noted that she lived on St. Louis Avenue a few blocks from defendant's apartment where the crimes occurred. The prosecutor opined that Ms. Smith was also of the age where she might identify with the defendant who was approximately her same age.

Juror Mr. Sturgeon was stricken because the prosecutor did not like his "gung-ho" attitude towards the concept of self-defense.

The main reason for striking Juror O'Neal was because his son had been charged with a crime, convicted, and sent to prison.

Ms. Banks and Mrs. Bratton were stricken because they were of the age and mentality where the prosecutor felt they would likely associate with a critical defense wit-

ness, namely the defendant's mother, Gloria Jordan.

Mr. Taylor was stricken because he kept dropping off to sleep. The prosecutor felt that Mr. Taylor showed little or no interest in what was going on and his responses indicated that he generally could care less about the proceedings.

Miss Petty was stricken because the prosecutor felt she evidenced dissatisfaction over a prior Juvenile Court proceeding and he feared she would blame the prosecution or blame the court as a result of that experience. Another reason cited for striking Ms. Petty was because the prosecutor believed that her family name (Petty) indicated a relation to a notorious crime family in the City of St. Louis.

In concluding his remarks the prosecutor stated that another reason for striking some of the women was that he anticipated calling a white female witness who was intimately acquainted with a crucial state eyewitness, a black male, and it was his experience "that black women tend to really get upset about black men associating ... with white women." He also noted for the record that because his victim was black he was not striking people because of their race.

Thereafter, the trial court found "factually and specifically that the state's strikes were not racially motivated."

When assessing the neutrality of a proffered reason we realize that the exercise of peremptory challenges is largely the product of the prosecutor's intuitive perceptions and subjective analysis regarding a venireperson's attitudes. *Antwine,* 743 S.W.2d at 66. These judgment calls may be based upon venireperson's demeanor, gender, ethnic background, employment, marital status, age, economic states, social position, religion, and innumerable other factors. *Id.* at 64.

The finding by the trial court that no constitutionally impermissible discrimination occurred was a factual one which we shall not set aside unless clearly erroneous. *Antwine,* 743 S.W.2d at 66. We give great deference to the trial court's findings and its opportunity to judge the credibility of the witnesses, including the prosecutor. *State v. Brown,* 747 S.W.2d 261, 264 (1988). We may not reverse the trial court on appeal unless we are left with the definite and firm impression,· after reviewing the entire record, that a mistake has been made and that the trial court's account of the evidence is implausible. *Antwine,* 743 S.W.2d at 66.

▆ In light of the entire record and in view of all relevant circumstances surrounding the case, we cannot say that clear error has occurred. Assuming, arguendo, that the prosecutor's final, and summary remark was racial we believe that the explanations, when viewed in its entirety, provides sufficiently legitimate and neutral reasons for each of the strikes made. Standing alone, the remarks concerning the feelings some of the black women might have towards a black man who was intimately acquainted with a white woman, would not be sufficient to withstand a constitutional challenge. See generally, *State v. Hood,* 745 S.W.2d 785, 786 (1988). (Unemployment alone is insufficient). However, this statement was coupled with the other reasons given by the prosecutor for striking each of the women. These reasons are all supported by the record or are matters relating to demeanor which is best left to the opportunity of the trial judge to observe and consider.

In further support of our conclusion that no clear error has occurred, we look to the totality of circumstances. Here, the victims, the defendant, and several key witnesses were black. "[T]the fact that the key witnesses for both sides are black 'would discount any advantage that a discriminating prosecutor might perceive in striking blacks from the jury'." *Hood,* at 787 (Citations omitted). There would be no advantage to the prosecutor to remove blacks from the venire for racial reasons. *Id.* at 787, 788. Accordingly, we cannot say that the trial court's finding is clearly erroneous. Appellant's point III is denied.

We turn now to appellant's final contentions wherein he argues that the trial court committed error:

XIV ... IN DENYING DEFENDANT'S OBJECTIONS AND MOTION FOR MISTRIAL AFTER THE STATE INTERJECTED QUESTIONS CONCERNING WHETHER OF NOT DRUGS WERE ON DEFENDANT'S PREMISES AND WHETHER DEFENDANT HAD BEEN USING DRUGS WEHRE [sic] SUCH QUESTIONS WERE DESIGNED TO AND HAD THE EFFECT OF PREJUDICING DEFENDANT'S USING DRUGS ON DATE OR BEFORE DATE OF THE OFFENSES, OR THAT DRUGS WERE THE MOTIVE FOR THE OFFENSES CHARGES[;]

XVI ... IN OVERRULING DEFENDANT'S OBJECTION TO THE STATE'S QUESTIONING DEFENDANT RELATIVE TO A PHONE CALLE [sic] RECEIVED PRIOR TO THE SHOOTING WHICH PHONE CALL WAS TO HAVE INFORMED DEFENDANT OF ESTERS AND MCCARTER BEING DRUG INFORMANTS WHERE THE QUESTION WAS SO INFLAMMATORY AND PREJUDICIAL AND WHERE THE COMBINED EFFECT OF THE INFERENCE AND REFERENCE TO DRUGS WAS SUCH THAT DEFENDANT COULD NOT RECEIVE A FAIR TRIAL THEREAFTER, EVEN THOUGH DEFENDANT DENIED THE QUESTION[; and,]

XVII ... IN PERMITTING THE STATE TO INQUIRE AS TO WHY DEFENDANT HAD BARS AND LOCKS ON HIS DOOR, AN INTERCOM OR BEEPER SYSTEM WHERE THE STATE WAS IMPROPERLY INFERRING THAT DEFENDANT WAS INVOLVED IN SOME ILLICIT ACTIVITY THAT REQUIRED THESE TYPES OF OBJECTS AND WAS AN ATTEMPT TO ATTACK DEFENDANT'S CHARACTER WHICH HAD NOT BEEN PLACED IN ISSUE BY DEFENDANT.

Appellant contends that the court's allowance of these questions was prejudicial and inflammatory in that it brought into evidence the inference of prior offenses committed by appellant and of appellant's bad character. We are not persuaded by appellant's contentions. The general rule is that a criminal defendant has the right to be tried only for the crimes with which he is charged. *State v. Morton,* 684 S.W.2d 601, 609 (Mo.App.1985). Accordingly, proof of the commission of separate or distinct crimes is inadmissible unless such proof has some legitimate tendency to directly establish defendant's guilt of the crime for which he is charged. *State v. Lue,* 598 S.W.2d 133, 137 (Mo. banc 1980). However, there are numerous exceptions to this general rule [5] and the mere mention of another offense is not per se prejudicial in the trial of a criminal case. *Id.*

With respect to appellant's point XIV, we note that the challenged questions were directed towards defense witness, Gloria Jordan, defendant's mother. The relevant cross-examination by the prosecutor and the testimony was:

Q. Did [Ronald Jordan] appear ... to be in an intoxicated condition?

A. No.

Q. Or a drugged condition?

A. No.

[Defense Counsel]: Your Honor—

Q. Did he talk plainly?

[Defense Counsel]: Your Honor, I'll object. I want to make a record please.

[Following a conference at the bench wherein defense counsel's motion for mistrial was overruled and wherein the prosecutor withdrew the question, the proceedings returned to open court].

[Prosecutor]: State withdraws the last question.

THE COURT: You may proceed.

[Defense Counsel]: Ask the jury to be instructed to disregard the question.

THE COURT: Please disregard the last question placed by the attorney for the state to the witness.

---

**5.** Evidence of other crimes is usually competent to prove the specific crime charged if it tends to establish (1) motive; (2) intent, (3) absence of accident or mistake, (4) common scheme or plan, (5) identity of the person charged with the commission of the crime on trial, or (6) "complete and coherent" picture. *State v. Goodson,* 690 S.W.2d 155, 158 (Mo.App.1985).

As to the particular dialogue, we find no basis for disturbing the judgment. Here the witness denied that her son appeared intoxicated or drugged the night before the shootings. Moreover, the prosecutor subsequently withdrew his question and the trial court instructed the jury to disregard the comments. Defendant was granted relief, short of a mistrial. A mistrial was not required. See, *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985). The trial court did not abuse its discretion in refusing to declare a mistrial. Appellant's point XIV is denied.

Appellant's entire argument in support of point XVI, wherein he alleges that the trial court erroneously allowed the state to question him concerning a phone call, is that "a trial court should grant a mistrial when the evidence and argument proffered by the prosecutor is glaringly offensive and prejudicial to the defendant's rights."

Appellant fails to provide us with any page references to the transcript so that we may properly address this issue. Our position, there, is that:

> [t]his court is not obligated to seek through the argument portion of defendant's brief or the transcript on appeal to come by an understanding of points relied on penned in a conclusory and abstract fashion. Points penned contrary to the mandatory requirements of Rule 30.06(d), V.A.M.R., and which cannot be understood without resorting to the transcript of the argument section of the brief, preserve nothing for appellant review. [Citation omitted]. However, as this tribunal did not give defendant a second opportunity to do what he should have done in the first instance (Rule 30.09, V.A.M.R.), we will briefly discuss what we assume the point to mean by referring to the transcript and the argument portion of the brief.

*State v. Gamble*, 649 S.W.2d 573, 576 (Mo. App.1983). We now attempt to address appellant's point.

 We assume that the challenged testimony concerns the following cross-examination of defendant:

Q. Hadn't you immediately prior, within ten minutes to [pointing the two guns at McCarter and Esters and ordering them out of his house], received a phone call from Fat Charles?
A. No.
Q. You do know Fat Charles, don't you?
A. I know you're speaking of, yes.
Q. Charles Churn?
A. Yes.
Q. Had he not told you something about those people or said "what in the world are you doing with those people in your house" or something like that?
A. Well, to be specific, he had stopped by the day before when Cheryl and Mark was over there that Wednesday, he had came by about five minutes and left.

This cross-examination was preceded by a bench conference wherein defense counsel objected to any references made to drugs being on the premises and filed a motion in limine to prevent potential inquiry into appellant's employment background. However, at no point, as far as we are able to discern, was any objection lodged relating to appellant's testimony in regards to a phone call from Charles Churn. No attempt was made to strike appellant's testimony from the record. Accordingly, where no objection has been made and where there is no ruling of the trial court to review, there is nothing preserved on appeal. See, *State v. Moss*, 700 S.W.2d 501, 503 (Mo.App.1985). We review only for plain error. Rule 30.20.

In this context we do not find that manifest injustice or miscarriage of justice has occurred. First, appellant denied receiving a phone call from "Fat Charles." Second, the question did not mention any illegal or illicit activity or connection involving Charles Churn. Finally, we note that a defendant who elects to testify may be contradicted and impeached like any other witness. *Moss*, 700 S.W.2d at 505. The permissible latitude of cross-examination of defendant in a criminal case is within the discretion of the trial court. *Id.* The trial

court did not abuse its discretion in permitting the prosecutor to inquire into phone calls received prior to the shootings. Appellant's point XVI is without merit.

■ Finally, we address appellant's point XVII. Appellant contends that testimony elicited concerning the fact that appellant maintained bars and locks on his doors and possessed an intercom or beeper system on January 30, 1986, allowed the prosecutor to impermissibly interject irrelevant and prejudicial evidence which attacked appellant's character before appellant had ever put his character in issue.

We once again note appellant has failed to adequately preserve his point for our review. Appellant has failed to identify where in the record the challenged testimony appears. However, because we have not provided appellant with a second chance to correct the errors, we will address appellant's argument.

Appellant's point appears to be based on the following segment of the prosecutor's cross-examination of appellant:

Q. And you keep the door locked even when you're inside, correct?

A. Yes.

Q. The gate?

A. Yes.

Q. Day and night, corret? [sic]

A. Yes.

Q. What kind of people are you afraid would get through that door, try to get through that door when you're there during the day inside?

A. What you mean, by me having it locked?

Q. Sure?

A. It was had been there for security, just to be locked period, whoever it might be or may not whoever it might be period.

Q. Did you own a or did you at a time own a beeper, correct?

A. That was my friend's beeper, it was not mine.

Q. Fat Charles' beeper?

A. No. Patrick Toms (sic).

Q. What were you doing with it?

A. I just had it, that's all.

Q. Carried it with you, didn't you?

A. Sometimes, not all the time.

Q. Carried it with you when you got the Trans Am to go to get the oil changed with Mark, did you not?

A. Maybe so, maybe I did, I'm not—I can't answer that, be positive.

Q. Let me show you State's Exhibit 108, do you recognize that particular item?

A. Yes, I guess so.

Q. That's your beeper, isn't it?

A. Well, I guess that's my beeper, they make them all the same way.

Q. It's the one you left in the Trans Am on Wednesday?

A. I don't recall leaving it in the Trans Am, I remember it last on my dresser.

Q. Now, were you employed on the 30th day of January, 1986?

A. No.

Q. What did not need a beeper for?

A. I didn't really need one.

A. Are those cheap, inexpensive?

Q. I didn't pay for that.

[Defense Counsel]: Your Honor, I'll object to this line of testimony, it's totally irrelevant. It's legal to have a beeper, it has no bearing on this case whatsoever.

[The Court]: Be overruled.

Q. They're not cheap, are they?

A. I don't know. I didn't buy that. I didn't pay for that.

We note that previously, on direct examination by defense counsel, appellant testified to the fact that his apartment had gates on the door and bars on the windows. Moreover, his mother had also testified, prior to appellant's testimony, that her son's apartment had an iron gate, bars on the windows, and an intercom. This information was received without objection. Thereafter, on recross-examination by the prosecutor, Ms. Jordan testified that her son carried a beeper because it was sometimes necessary for her to get in touch with her son.

Viewed in this context we cannot say that error has occurred. First, with regard

to appellant's testimony, no specific dates, times, or crimes were referred to. No facts concerning prior acts of misconduct, specific details or particular bad acts were elicited. *See, e.g., State v. Dunn,* 577 S.W. 2d 649, 653 (Mo. banc 1979). The line of questioning certainly does not rise to the level of that found in *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1985) (defendant questioned by prosecutor as to how many people he had shot) which was found to be not prejudicial.

Second, we emphasize the cumulative aspect of this testimony. The fact that appellant's apartment had iron gates, bars and an intercom, in addition to the fact that he carried a beeper, had already been received into evidence by appellant's own direct testimony and by the testimony of his mother. Even if the trial court erred in admitting the aforesaid evidence, it was not prejudicial to appellant's case. See, *Conoyer v. Conoyer,* 695 S.W.2d 480, 482 (Mo.App. 1985). For these reasons, we find appellant's point XVII to be without merit. Point denied.

Judgment affirmed.

SMITH and KELLY, JJ., concur.